MENACHO and others *v.* WARD and others.

SAME *v.* ALEXANDRE and others.

(*Circuit Court, S. D. New York.* May 15, 1886.)

CARRIERS OF GOODS—DISCRIMINATION IN RATES—EXCLUSIVE PATRONAGE.
  While a common carrier may make discriminations in rates, based upon the quantities of goods sent by different shippers, he cannot charge a higher rate against shippers who refuse to patronize him exclusively.[1]

In Equity.
*Frederic R. Coudert* and *Edward K. Jones,* for complainants.
*James C. Custer* and *Lewis C. Ledyard,* for defendants.

WALLACE, J. The complainants have filed a bill in each of these causes to restrain the defendants from making discriminations for transportation against the complainants, which consist in charging them a higher rate of freight than is charged by defendants to other shippers of merchandise generally. A motion is now made for a preliminary injunction. The facts in each case are essentially the same, and both cases may be considered together.

The complainants are merchants domiciled in the city of New York, and engaged in commerce between that port and the island of Cuba. The defendants are proprietors or managers of steam-ship lines plying between New York and Cuba. Formerly the business of transportation between the two places was carried on by sailing vessels. In 1877 the line of steam-ships known as "Ward's Line" was established, and in 1881 was incorporated by the name of the New York & Cuba Mail Steam-ship Line under the general laws of the state of New York. At the time of the incorporation of this company the line of steam-ships owned by the defendants Alexandre & Sons had also been established. These two lines were competitors between New York and Cuba, but for several years both lines have been operated under a traffic agreement between themselves, by which uniform rates are charged by each to the public for transportation. The two lines are the only lines engaged in the business of regular transportation between New York and Cuba; and unless merchants choose to avail themselves of the facilities offered by them, they are obliged to ship their merchandise by vessels or steamers which may casually ply between the two places.

It is alleged by the complainant that the defendants have announced generally to New York merchants engaged in Cuban trade that they must not patronize steam-ships which offer for a single voyage, and on various occasions when other steam-ships have attempted to procure cargoes from New York to Havanna have notified

[1] See note at end of case.

shippers that those employing such steam-ships would thereafter be subjected to onerous discriminations by the defendants. The defendants allege in their answer to the bill, in effect, that it has been found necessary, for the purpose of securing sufficient patronage, to make differences in rates of freight between shippers in favor of those who will agree to patronize the defendants exclusively. Within a few months before the commencement of this suit two foreign steamers were sent to New York to take cargoes to Havanna, and the complainants were requested to act as agents. Thereupon the complainants were notified by the defendants that they would be "placed upon the black-list" if they shipped goods by these steamers, and that their rates of freight would thereafter be advanced on all goods which they might have occasion to send by the defendants. Since that time the defendants have habitually charged the complainants greater rates of freight than those merchants who shipped exclusively by the defendants. The freight charges, by the course of business, are paid by consignees at the Cuban ports. The complainants have attempted to pay the freight in advance, but have found this course impracticable because their consignees are precluded from deducting damages or deficiencies upon the arrival of the goods from the charges for freight, and as a result some of the complainants' correspondents in Cuba refuse to continue business relations with them, being unwilling to submit to the annoyance of readjusting overcharges with complainants. Upon this state of facts the complainants have founded the allegation of their bill that the defendants "have arbitrarily refused them equal terms, facilities, and accommodations to those granted and allowed by the defendants to other shippers, and have arbitrarily exacted from them a much greater rate of freight than the defendants have at the same time charged to shippers of merchandise generally as a condition of receiving and transporting merchandise." They apply for an injunction upon the theory that their grievances cannot be redressed by an action at law.

It is contended for the complainants that a common carrier owes an equal duty to every member of the community, and is not permitted to make unequal preferences in favor of one person, or class of persons, as against another person or class. The defendants insist that it is permitted to common carriers to make reasonable discriminations in the rates demanded from the public; that they are not required to carry for all at the same rates; that discriminations are reasonable which are based upon the quantity of goods sent by different shippers; and that the discrimination in the present case is essentially such a discrimination, and has no element of personal preference, and is necessary for the protection of the defendants.

Unquestionably a common carrier is always entitled to a reasonable compensation for his services. Hence it follows that he is not required to treat all those who patronize him with absolute equality. It is his privilege to charge less than fair compensation to one person,

or to a class of persons, and others cannot justly complain so long as he carries on reasonable terms for them. Respecting preferences in rates of compensation, his obligation is to charge no more than a fair return in each particular transaction, and except as thus restricted he is free to discriminate at pleasure. This is the equal justice to all which the law exacts from the common carrier in his relations with the public. *Baxendale* v. *Eastern Counties R. Co.*, 4 C. B. (N. S.) 78; *Branley* v. *Southeastern R. Co.*, 12 C. B. (N. S.) 74; *Fitchburg R. Co.* v. *Gage*, 12 Gray, 393; *Sargent* v. *Boston & L. R. Corp.*, 115 Mass. 416, 422.

It is in this sense that the observations found in some of the authorities are to be understood. So understood, the language of the opinion in *Messenger* v. *Pennsylvania R. Co.*, 37 N. J. Law, 531, is apposite:

"The business of the common carrier is for the public, and it is his duty to serve the public indifferently. In the very nature, then, of his duty, and of the public right, his conduct should be equal and just to all. * * * A common carrier owes an equal duty to all, and it cannot be discharged if he is allowed to make unequal preferences, and thereby prevent or impair the enjoyment of the common right."

In the same sense the remarks of the court in *McDuffee* v. *Portland & R. R. Co.*, 52 N. H. 430, S. C. 13 Amer. Rep. 72, are approved and adopted as pertinent to the case in hand. The court says:

"And as all common carriers combined cannot, directly or indirectly, destroy or interrupt the common right by stopping their branch of the public service while they remain in that service, so neither all of them together, nor one alone, can directly or indirectly deprive any individual of his lawful enjoyment of the common right. Equality, in the sense of freedom from unreasonable discrimination, being of the very substance of the common right, an individual is deprived of his lawful enjoyment of the common right when he is subjected to unreasonable and injurious discrimination in respect to terms, facilities, or accommodations. * * * A denial of the entire right of service by a refusal to carry differs, if at all, in degree only, and in the amount of damage done, and not in the essential character of the act, from a denial of the right in part by an unreasonable discrimination in terms, facilities, or accommodations. Whether the denial is general by refusing to furnish any transportation whatever, or special, by refusing to carry for one person or his goods; whether it is direct, by expressly refusing to carry, or indirect, by imposing such unreasonable terms, facilities, or accommodations as render carriage undesirable; whether unreasonableness of terms, facilities, or accommodations operates as a total or a partial denial of the right; and whether the unreasonableness is in the intrinsic individual nature of the terms, facilities, or accommodations, or in their discriminating, collective, and comparative character,—the right denied is one and the same common right which would not be a right if it could be rightfully denied, and would not be common in the legal sense if it could be legally subjected to unreasonable discrimination and parceled out among them in unreasonable, superior, and inferior grades, at the behest of the servant from whom the service is due."

In the present case the question whether the defendants refuse to carry for the complainants at a reasonable compensation resolves it-

self into another form. Can the defendants lawfully require the complainants to pay more for carrying the same kind of merchandise, under like conditions, to the same places, than they charge to others, because the complainants refuse to patronize the defendants exclusively, while other shippers do not? The fact that the carrier charges some less than others for the same service is merely evidence for the latter, tending to show that he charges them too much; but, when it appears that the charges are greater than those ordinarily and uniformly made to others for similiar services, the fact is not only competent evidence against the carrier, but cogent evidence, and shifts upon him the burden of justifying the exceptional charge. The estimate placed by a party upon the value of his own services of property is always sufficient, against him, to establish the real value; but it has augmented probative force, and is almost conclusive against him, when he has adopted it in a long-continued and extensive course of business dealings, and held it out as a fixed and notorious standard for the information of the public.

The defendants assume to justify upon the theory that a carrier may regulate his charges upon the basis of the quantity of goods delivered to him for transportation by different shippers, and that their discrimination against the plaintiff is in substance one made with reference to the quantity of merchandise furnished by them for carriage. Courts of law have always recognized the rights of carriers to regulate their charges with reference to the quantity of merchandise carried for the shipper, either at a given shipment, or during a given period of time, although public sentiment in many communities has objected to such discriminations, and crystallized into legislative condemnation of the practice. By the English statutes (17 & 18 Vict. c. 31) railway and canal carriers are prohibited from "giving any undue or unreasonable preference or advantage to or in favor of any particular description of traffic, in any respect whatever," in the receiving, forwarding, and delivery of traffic; but under these provisions of positive law the courts have held that it is not an undue preference to give lower rates for larger quantities of freight. *Ransome* v. *Eastern C. R. Co.*, 1 Nev. & McN. 63, 155; *Nicholson* v. *Great Western Ry. Co.*, Id. 121; *Strick* v. *Swansea Canal Co.*, 16 C. B. (N. S.) 245; *Greenop* v. *S. E. R. Co.*, 2 Nev. & McN. 319.

These decisions proceed upon the ground that the carrier is entitled to take into consideration the question of his own profits and interests in determining what charges are reasonable. He may be able to carry a large quantity of goods, under some circumstances, at no greater expense than would be required to carry a smaller quantity. His fair compensation for carrying the smaller quantity might not be correctly measured by the rate per pound, per bushel, or per mile charged for the larger. If he is assured of regular shipments at given times, he may be able to make more economical arrangements for transportation. By extending special inducements to the

public for patronage he may be able to increase his business, without a corresponding increase of capital or expense in transacting it, and thus derive a larger profit. He is therefore justified in making discriminations by a scale of rates having reference to a standard of fair remuneration of all who patronize him. But it is impossible to maintain that any analogy exists between a discrimination based upon the quantity of business furnished by different classes of shippers, and one which altogether ignores this consideration, and has no relation to the profits or compensation which the carrier ought to derive for a given quantum of service.

The proposition is speciously put that the carrier may reasonably discriminate between two classes of shippers, the regular and the casual; and that such is the only discrimination here. Undoubtedly the carrier may adopt a commutative system, whereby those who furnish him a regular traffic may obtain reduced rates, just as he may properly regulate his charges upon the basis of the quantity of traffic which he receives from different classes of shippers. But this is not the proposition to be discussed. The defendants assume to discriminate against the complainants, not because they do not furnish them a regular business, or a given number of shipments, or a certain quantity of merchandise to carry, but because they refuse to patronize the defendants exclusively. The question is whether the defendants refuse to carry for the complainants on reasonable terms. The defendants, to maintain the affirmative, assert that their charges are fair because they do not have the whole of the complainants' carrying business. But it can never be material to consider whether the carrier is permitted to enjoy a monopoly of the transportation for a particular individual, or class of individuals, in ascertaining what is reasonable compensation for the services actually rendered to him or them. Such a consideration might be influential in inducing parties to contract in advance; but it has no legitimate bearing upon the value of services rendered without a special contract, or which are rendered because the law requires them to be rendered for a fair remuneration.

A common carrier "is in the exercise of a sort of public office, and has public duties to perform, from which he should not be permitted to exonerate himself." NELSON, J., in *New Jersey Steam Nav. Co.* v. *Merchants' Bank*, 6 How. 344. His obligations and liabilities are not dependent upon contract, though they may be modified and limited by contract. They are imposed by the law, from the public nature of his employment. *Hannibal R. R.* v. *Swift*, 12 Wall. 262. As their business is "affected with a public interest," it is subject to legislative regulation. "In matters which do affect the public enterest, and as to which legislative control may be exercised, if there are no statutory regulations upon the subject, the courts must determine what is reasonable." WAITE, C. J., in *Munn* v. *Illinois*, 94 U. S. 113, 134. It is upon this foundation, and not alone because the business

of common carriers is so largely controlled by corporations exercising under franchises the privileges which are held in trust for the public benefit, that the courts have so strenuously resisted their attempts, by special contracts or unfair preferences, to discriminate between those whom it is their duty to serve impartially. And the courts are especially solicitous to discountenance all contracts or arrangements by these public servants which savor of a purpose to stifle competition or repress rivalry in the departments of business in which they ply their vocation. Illustrations are found in the cases of *State* v. *Hartford & N. H. R. Co.*, 29 Conn. 538; *Hooker* v. *Vandewater*, 4 Denio, 349; *W. U. Tel. Co.* v. *Chicago & P. R. Co.*, 86 Ill. 246; *Coe* v. *Louisville & N. R. Co.*, 3 Fed. Rep. 775.

The vice of the discrimination here is that it is calculated to coerce all those who have occasion to employ common carriers between New York and Cuba from employing such agencies as may offer. Its tendency is to deprive the public of their legitimate opportunities to obtain carriage on the best terms they can. If it is tolerated, it will result practically in giving the defendants a monopoly of the carrying trade between these places. Manifestly it is enforced by the defendants in order to discourage all others from attempting to serve the public as carriers between these places. Such discrimination is not only unreasonable, but is odious. Ordinarily the remedy against a carrier is at law for damages for a refusal to carry, or to recover the excess of charges paid to obtain the delivery of goods. The special circumstances in this case indicate that such a remedy would not afford complete and adequate redress, "as practical and efficient to the ends of justice" as the remedy in equity. *Watson* v. *Sutherland*, 5 Wall. 74.

The motion for an injunction is granted.

### NOTE.

Where such a corporation, as a common carrier of freights, in consideration of the fact that a shipper furnished a greater quantity of freights than other shippers during a given term, agrees to make a rebate on the published tariff on such freights, to the prejudice of the other shippers of like freights under the same circumstances, *held*, such a contract is an unlawful discrimination in favor of the larger shipper, tending to create monoply, destroy competition, injure, if not destroy, the business of smaller operators, contrary to public policy, and will be declared void at the instance of parties injured thereby. Such a contract of discrimination cannot be upheld simply because the favored shipper may furnish for shipment during the year a larger freightage in the aggregate than any other shipper, or more than all others combined. A discrimination resting exclusively on such a basis will not be sustained. Scofield v. Lake Shore & M. S. Ry. Co., (Ohio,) 3 N. E. Rep. 907.

Discriminations in rates of freight charged by a railroad company to shippers, based solely on the amount of freight shipped, without reference to any conditions tending to decrease the cost of transportation, are discriminations in favor of capital, are contrary to sound public policy, violative of that equality of rights guarantied to every citizen, and a wrong to the disfavored party, for which he is entitled to recover from the railroad company the amount of freight paid by him in excess of the rates accorded by it to his most favored competitor, with interest on such sum. Hays v. Pennsylvania Co., 12 Fed. Rep. 309.

It is held in Ragan v. Aiken, 9 Lea, 609, that in order to secure freight which would otherwise go to a different route, a railroad company may discriminate in rates in favor of persons living at a distance from its route, provided its charges against others

not similarly situated is reasonable. The court say: "Discrimination in rates of freights if fair and reasonable, and founded on grounds consistent with public interest, are allowable. Hersh v. Northern, Cent. Ry. Co., 74 Pa. St. 181; Chicago, etc., R. Co. v. People, 67 Ill. 11; Fitchburg R. Co. v. Gage, 12 Gray, 393. The important point to every freighter is that the charge shall be reasonable, and a right of action will not exist in favor of any one unless it be shown that unreasonable inequality had been made to his detriment. A reasonable price paid by such a party is not made unreasonable by a less price paid by others; or, as said by Crompton, J., to the plaintiff, upon the trial of such a suit: 'The charging another party too little is not charging you too much.' Garton v. Bristol & E. Ry. Co., 1 Best & S. 112, 154, 165; McDuffee v. Portland & R. R. R., 52 N. H. 430. In determining whether a company has given undue preference to a particular person, the court may look to the interests of the company. Ransome v. Eastern Counties Ry. Co., 1 C. B. (N. S.) 437; [Barber v. Brown,] Id. 135. In other words, if the charge on the goods of the party complaining is reasonable, and such as the company would be required to adhere to as to all persons in like condition, it may, nevertheless, lower the charge of another person, if it be to the advantage of the company, not inconsistent with the public interest, and based on a sufficient reason."

In *Johnson v. Pensacola & P. R. Co.*, 16 Fla. 623, it is held that a common carrier is bound to carry for a reasonable remuneration, but is not bound to carry at the same price for all. The court say: "Our conclusions are that, as against a common or public carrier, every person has the same right; that in all cases, where his common duty controls, he cannot refuse A. and accommodate B.; that all, the entire public, have the right to the same carriage for a reasonable price, and at a reasonable charge for the services performed; that the commonness of the duty to carry for all, does not involve a commonness or equality of compensation or charge; that all the shipper can ask of a common carrier is that for the service performed he shall charge no more than a reasonable sum to him; that whatever the carrier charges another more or less than the price charged a particular individual may be a matter of evidence in determining whether a charge is too much or too little for the services performed, and that the difference between the charges cannot be the measure of damages in any case unless it is established by proof that the smaller charge is the true, reasonable charge in view of the transportation furnished, and that the higher charge is excessive to that degree. The obligation in this matter must be reciprocal. Where there is no express contract the common-law action by the carrier against the shipper is for a *quantum meruit*, and the liability of the shipper is for a reasonable sum in view of the service performed for him. What is charged another person, or the usual charge made against many others, (the freight tariff,) is matter of evidence admissible to ascertain the value of the services performed. In every case the legality of the charge is established and measured by the value of the services performed, and not by what is charged another, unless what is charged the other is the compensating sum, in which event it is the proper sum, not on account of its equality, but because of the relation it bears to the value of the services performed as an adequate compensation therefor. To sum the whole matter up, the common law is that a common carrier shall not charge excessive freights. It protects the individual from extortion, and limits the carrier to a reasonable rate; and this on account of the fact that he exercises a public employment, enjoys exclusive franchises and privileges, derived, in the case of the defendant here, by grant from the state. The rule is not that all shall be charged equally, but reasonably, because the law is for the reasonable charge and not the equal charge. A statement of inequality does not make a legal cause of action, because it is not necessarily unreasonable. It would be a strange rule indeed that would authorize a shipper, after being compelled to pay his freights according to established rates, to look around and find some smaller charge for the same service during the same time which may be either as a gratuity, or a sale of services at a non-compensating rate, or less than the reasonable charge, and claim his damages according to this difference, based upon an inequality not general in its character, but existing only by virtue of a charge made for the same service against one other person."