Argued November 23, decided December 21, 1909, rehearing denied June 7, 1910.

## PORTLAND RY. LIGHT & POWER CO. *v.* RAILROAD COMMISSION.*

[105 Pac. 709: 109 Pac. 273.]

CARRIERS—REGULATION—RATES—UNJUST DISCRIMINATION— DISCRIMINATION AS TO LOCALITIES—"RAILROAD."

1. Railroad Commission Law (Laws 1907, p. 70, c. 53, § 11), makes the term "railroad" as used therein include all corporations which operate by electric power any interurban railroad, etc.  Section 28 authorizes the Railroad Commission, upon complaint of any municipality that fares are unreasonable, or discriminatory, to investigate and order just and reasonable fares, upon finding that those complained of are unreasonable or unjustly discriminatory.  Section 48 makes it unlawful to charge smaller compensation to persons furnishing part of the facilities than to other persons.  Section 49 makes the giving of an unreasonable preference, or the subjecting of any person to an unreasonable prejudice, an unjust discrimination.  Section 59 requires the act to be liberally construed to attain the public welfare and substantial justice between passengers and railroads.  Section 61 makes the duties of railroads the same as at common law, and the remedies against them the same, except where otherwise provided, and makes the provisions of the act cumulative.  *Held,* in view of Section 61, that the Railroad Commission could correct charges made by an electric railroad company which were unjustly discriminatory as to a locality, upon complaint of a town, independent of Laws 1909, p. 158, c. 97, making the provisions of the railroad commission law applicable to any locality.

STATUTES—LEGISLATIVE GRANTS—CONSTRUCTION.

2. The maxim that without which a grant would not be effective is deemed to pass with the grant, though generally applied to grants of realty, is also adapted to the construction of statutes.

CONSTITUTIONAL LAW—VESTED RIGHTS—REGULATION OF RATES—EXERCISE OF POLICE POWER.

3. Section 2, Article XI, Constitution of Oregon, permitting corporations to be formed under general laws, and permitting all laws passed

---

*This case has been appealed and is now pending in the United States Supreme Court.          REPORTER.

pursuant to that section to be amended or repealed, but not so as to impair vested corporate rights, did not prohibit the application of railroad commission law (laws 1907, p. 93, c. 53, § 48), making it an offense for any railroad company to collect for carrying one person more than it demands from another for a like service, to an electric railroad company so as to compel transfer privileges on a certain line, and reduce the fare charged thereon to that charged on another line of the same length, under a contract with its predecessor that the fare on the latter line should never exceed a certain sum, with transfer privileges.

CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS.

4. Such application of the statute was not prohibited by Section 21, Article I, Constitution of Oregon, forbidding laws impairing the obligation of contracts.

CONSTITUTIONAL LAW — VESTED RIGHT — RAILROADS — REGULATIONS — RATES.

5. Though the right of a railroad company to collect reasonable fares is a vested right, it is subject to the police power of the State.

CONSTITUTIONAL LAW—POLICE POWER—DELEGATION.

6. The police power of the State cannot be bargained away by contract or otherwise.

CARRIERS—REGULATIONS—RATES—CONTRACT.

7. A contract between a street railroad company and its predecessor, fixing the passenger fares on a certain line at a certain sum, will be assumed to be valid until abrogated by law.

CARRIERS—REGULATIONS—RATES—DISCRIMINATION—OFFENSE.

8. Railroad Commission law (Laws 1907, p. 93, c. 53, § 48), making it an offense for any railroad company to collect for carrying one person more than it demands from another for a like contemporaneous service, which omitted the words "under substantially similar circumstances and conditions," as used in Interstate Commerce Law (Act Congress February 4, 1887, c. 104, § 2, 24 St. 379 [U. S. Comp. St. 1901, p. 3155]), after which section 48 was patterned, applies to the different lines of an electric railway company, though the conditions, such as the cost of construction, etc., are not the same on the several lines.

CARRIERS—REGULATION—RATES—UNJUST DISCRIMINATION.

9. Under Railroad Commission law (Laws 1907, p. 82, c. 53, § 28), authorizing the Railroad Commission, upon finding on investigation upon the complaint of any municipality, that fares are unreasonable or discriminatory, to substitute just and reasonable fares therefor, fares may be changed if they are unjustly discriminatory, though not unreasonable for the service performed, so that, where an electric railroad company voluntarily charged a five-cent fare, with transfer privileges, from the limits of a city of over 50,000 population, within which the fare was limited to five cents by statute, to a certain town, it thereby established the value of similar service on its other lines, and it was an unjust discrimination to charge a ten-cent fare on a different line to another town an equal distance from the limits of such city, and that the population outside the city limits on the five-cent lines was denser than on the ten-cent lines, or that the fares on the former lines were limited to five cents by a contract with the company's predecessor, or that the physical conditions at the point on one of the five-cent lines where it crossed the city limits made it impossible for passengers to leave the cars there, was immaterial.

ON PETITION FOR REHEARING.

CONSTITUTIONAL LAW—STATUTES—RAILROAD COMMISSION ACT.

10. The railroad commission act (Laws 1907, c. 53) does not violate any provision of the fourteenth amendment of the federal constitution.

CONSTITUTIONAL LAW—EQUAL PROTECTION OF THE LAWS.

11. The requirements of the fourteenth amendment to the federal constitution apply both to privileges conferred and liabilities imposed, and no greater burdens may be imposed on one than are laid on others in the same calling and condition.

CARRIERS—REGULATIONS OF RATES—ORDERS OF RAILROAD COMMISSION.

12. An order of the Railroad Commission requiring an electric railroad to cease an unlawful discrimination between the passengers from one locality and those from another locality by desisting from refusing the latter the same transfer privileges voluntarily accorded to the former may be complied with by giving transfers to all or by desisting entirely from giving transfers, and it is not a positive command to give transfers.

CARRIERS—RATES—UNJUST DISCRIMINATION.

13. The fact that a rate imposed by a carrier is *per se* reasonable does not disprove the charge that it is unlawful, for, where rates are relatively unjust so that undue preference is afforded to one locality or undue prejudice results to another, the higher rate is unjust, though it is not in itself excessive.

CARRIERS—RATES—REASONABLENESS.

14. The right of one locality is not increased by the fact that it conveyed to an electric railroad the value of the roadbed, nor is the right of a competing locality diminished thereby, but the rates for the two localities must be equal.

CARRIERS—RATES—REGULATIONS—STATUTES.

15. The Portland city charter (Laws 1903, § 73), authorizing the city to prescribe rates for transportation of passengers or property within its limits, and Laws 1907, p. 70, § 11, providing that the act regulating carriers shall not apply to the transportation of passengers carried solely within the limits of cities by street and other railroads, do not prohibit the Railroad Commission from regulating rates on traffic originating or extending beyond the boundaries of the city of Portland.

From Marion: WILLIAM GALLOWAY, Judge

Statement by MR. CHIEF JUSTICE MOORE.

This is a suit to set aside an order made by the defendant, the Railroad Commission of Oregon, requiring the plaintiff, the Portland Railway, Light & Power Company, a corporation, to reduce in some particulars a schedule of fares, and also to deliver, to persons paying the diminished charge, transfer tickets granting further conveyance on other cars under its management. The facts are as follows: The plaintiff controls and operates cars pro-

pelled by electricity on urban, suburban, and interurban, railways. Thus the Oregon City division extends from the intersection of First and Alder streets, in the city of Portland, easterly across the Willamette River, thence southerly through Golf Junction, Milwaukie, and other places to Canemah; the Mt. Scott division continues east from a junction with the Oregon City division to Mt. Tabor Junction, and thence southerly through Lents to Lents Junction; the Sellwood branch extends south from a junction with the Mt. Scott division to Golf Junction; and the Springwater division extends east from Golf Junction through Nickum, Lents Junction and other places, and thence southerly to Cazadero. A part of the Mt. Scott division, 3.50 miles in length, and lying outside the limits of Portland, was granted to the plaintiff subject to a contract made with its predecessors April 30, 1901, stipulating that for a term of ten years from that date the fare per passenger from Lents and intermediate points to and through the city of Portland should never exceed five cents, and providing that, if the covenant were broken, the property so conveyed should revert to the grantor. As the inhabitants of Portland exceed 50,000, not more than five cents can be demanded for carrying any person on a street railway line, for a continuous trip in one general direction, between any two points in the city. Section 2096, B. & C. Comp. (Laws 1907, p. 70, c. 53, § 11). The plaintiff has faithfully performed the terms and conditions of the contract mentioned and, when requested, has issued to all passengers on the Mt. Scott division, boarding its cars within the limits specified, transfer tickets entitling them to further transportation over lines of railway controlled by it in Portland, though the trackage distance from Lents to the intersection of First and Alder streets by way of this division is 7.69 miles. The distance from such terminus by way of the Oregon City division to Milwaukie is

6.71 miles, of which trackage 1.35 miles is outside the city boundary. The fare to and from Milwaukie to Portland is ten cents, and no transfers over the lines controlled by the plaintiff in the latter city are granted to passengers over such division.

The municipality of Milwaukie, by its mayor, filed with the Railroad Commission a complaint, asserting that the fare for carrying passengers, as last indicated, was unjustly discriminatory against that town. Upon investigation, pursuant to notice, the Commission stated the facts in substance, as hereinbefore detailed, determined, by an original and a supplemental finding, that the ten-cent fare specified was subject to the charge interposed, and made an order requiring the plaintiff to desist from demanding or collecting more than five cents of any individual for such transportation in either direction, and also to deliver to such passengers the same transfer privileges that were accorded to persons traveling between Lents and Portland.

This suit, being at issue, was tried, and from the testimony taken the court made findings of fact conformable to those framed by the Railroad Commission, to the effect that the plaintiff's observance of the terms of the contract referred to had substantially increased the value of lands in the town of Lents and its vicinity, and had also materially augmented the population thereof, while in consequence of the discrimination the town of Milwaukie had remained practically unchanged, stating the particulars as to each place; that the fares on the Oregon City division, when measured with the charges on other lines, were not unreasonable, but, when compared with similar exactions for transportation on the Springwater and the Mt. Scott divisions, were unjust, unreasonable, and discriminatory, and, having approved the order of the Railroad Commission, the plaintiff appeals.

AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. Frederick V. Holman* and *Mr. Franklin T. Griffith.*

For respondent there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Messrs. Giltner & Sewall* and *Mr. Clyde B. Aitchison,* with oral arguments by *Mr. Crawford* and *Mr. R. R. Giltner.*

Opinion by Mr. Chief Justice Moore.

It is maintained by plaintiff's counsel that the law in force when the order was confirmed did not authorize a regulation of fares in consequence of discrimination against any locality, but only when a difference in charges was made to passengers for like and contemporaneous service, and, such being the case, an error was committed in rendering the decree herein.

1. A statute was enacted February 18, 1907, creating a Railroad Commission, and containing provisions which, so far as deemed material, are as follows:

"The term 'railroad' as used herein shall mean and embrace all corporations * * that now, or may hereafter, own, operate by * * electric * * power, manage or control, any * * interurban railroad * * as a common carrier in this State." Laws 1907, p. 70, c. 53, § 11.

"Upon complaint of any * * municipal organization, that any of the * * fares, * * are in any respect unreasonable or unjustly discriminatory, * * the Commission may notify the railroad complained of that complaint has been made, and ten days after such notice has been given the Commission may proceed to investigate the same. * * If upon such investigation the * * fares, * * complained of shall be found to be unreasonable or unjustly discriminatory, * * the Commission shall have power to fix and order substituted therefor such * * fares, * * as it shall have determined to be just and reasonable and which shall be charged, imposed and followed in the future." Id. § 28.

"Whenever, upon an investigation made under the provisions of this act, the Commission shall find any existing * * fares, * * are unreasonable or unjustly discrimina-

tory, * * it shall determine and by order fix a reasonable * * fare * * to be imposed, observed, and followed in the future in lieu of that found to be unreasonable or unjustly discriminatory." Id. § 30.

"It shall be unlawful for any railroad to demand, charge, collect or receive from any person, firm or corporation a less compensation for * * any service rendered or to be rendered by said railroad, in consideration of said person, firm or corporation furnishing any part of the facilities incident thereto." Id. § 48.

"If any railroad shall make or give any undue or unreasonable preference or advantage to any particular person, firm, or corporation, or shall subject any particular person, firm, or corporation, * * ᵕo any undue or unreasonable prejudice or disadvantage in any respect whatsoever, such railroad shall be deemed guilty of unjust discrimination." Id. § 49.

"The provisions of this act shall be liberally construed with a view to the public welfare, efficient transportation facilities, and substantial justice between * * passengers and railroads." Id. § 59.

"The duties and liabilities of the railroads defined in Section 11 of this act, shall be the same as are prescribed by the common law, and the remedies against them the same, except where otherwise provided by the constitution or statutes of this State, and the provisions of this act are cumulative thereto." Id. § 61.

After the decree herein was rendered a statute was enacted making the provisions of the railroad commission law applicable to any locality. Laws 1909, p. 158, c. 97. It might seem that the latter law was a legislative interpretation that the original act did not interdict the collection of fares that were unreasonable or unjustly discriminatory as to a locality. "The enactments of any specific provisions on a particular subject," says a text-writer, "are not to be regarded as conclusive declarations that the law was different before." End. Int. Stat. § 374. At common law, as the carrier deals with individuals, they alone can prefer charges for a wrongful discrimination. Beale and Wyman, R. R. Rate Reg. § 831. These

authors, at the section noted, say: "Except under a statute, a city or locality or the citizens in general cannot complain of the rates charged by a carrier."

The rules which derive their authority from the judgments and decrees of courts, recognizing and enforcing the usages and customs of immemorial antiquity, having by Section 61 of the railroad commission act, been made expressly applicable to the regulation of railroads of Oregon. Do the principles of the common law afford a remedy for the correction of charges made by a common carrier, where they are in any respect unjustly discriminatory as to a locality, when the original law under consideration (Section 28) authorizes a complaint thereof to be made by a municipal organization? The doctrine has been asserted that by the ancient law a carrier of chattels for any person, though he was obliged to transport, for a reasonable consideration, all proper goods in the order in which they were received, and that when the charge exacted therefor did not exceed the measure indicated, he could legally transport similar goods for others over the same line and distance for a less sum, which discrimination was held not to be unjust, because the less favored shipper, who was obliged to pay the higher freight charges, had only liquidated the legal demand. 17 Am. & Eng. Enc. Law (2 ed.) 135; Story, Bail. § 508*a*; Wood's Ry. Law, § 197. It was subsequently ascertained that the application of such a principle permitted the patronized consignors to undersell their business rivals to the extent of the discrimination in freight rates, thereby destroying the competition of others, and building up monopolies for themselves, to prevent which laws were enacted, evidencing a growing popular sentiment against the doctrine first promulgated. In the absence of such legislation, however, the courts of last resort, when not committed by an opinion to the contrary have held that the carrier's charges should not only be

reasonable, but should also be equal as to all persons who might be affected thereby. Beale and Wyman, R. R. Rate Reg. § 741; *Messenger* v. *Pennsylvania R. R. Co.*, 36 N. J. Law, 407 (13 Am. Rep. 457); *Id.*, 37 N. J. Law, 531 (18 Am. Rep. 754). A text-writer, referring to this principle, observes:

"The English courts have said that at common law common carriers were bound to make reasonable, but not equal, charges, and that one of whom a fair compensation was exacted had no cause of complaint because another obtained a similar service for less. It is doubtful if this really was the common law of England; certainly it never was that of the United States. It is the settled American doctrine that, as common carriers exercise a public employment, they owe equal duties to all, and must make no unjust or injurious discrimination between different individuals in their rates of toll." Bald. Am. R. R. Law, c. 35, § 1.

2. Chapter 53 of the Laws of 1907 was enacted to prevent discrimination; and, in order to make the statute effective, the act expressly declares that its provisions shall be liberally construed, with a view to the public welfare and the promotion of substantial justice between passengers and railroads. The axiom, "whoever grants a thing is deemed also to grant that without which the grant itself would be of no effect," though generally applied to the transfer of real property, is also adapted to the construction of acts of the legislature. Broom, Legal Max. (7th Eng. ed.) 359; End. Stat. Const. § 418. As the original statute enlarged the common law right by permitting a municipal organization to make complaint of unjust discrimination, the act imports that the accusation sanctioned may be invoked to call attention to favoritism as against a locality over which the officers of the municipality have control, and the language so employed necessarily implies that the Railroad Commission, though not in explicit terms, is, by reasonable

intendment, directed to hear and determine the charges, and empowered to grant the requisite relief. Giving to the original act the enlarged interpretation which is expressly demanded, we conclude that the statute of 1909 (chapter 97), making the railroad commission law applicable to a locality, was adopted out of an abundance of caution, and to remove all doubt in relation thereto, but that the amendment was a matter of supererogation, for plenary power to correct discrimination as to localities was impliedly granted by the original act, and hence the orders undertaken to be set aside are not void for want of jurisdiction.

3. It is contended that the five-cent fare on the Mt. Scott division from Lents and intermediate stations to and through the city of Portland was established pursuant to a valid contract entered into by plaintiff's predecessor for a valuable consideration six years prior to the passage of the railroad commission law, that by virtue of such agreement the plaintiff secured a vested right of which it cannot be deprived, and that the attempt to do so, as manifested by section 48 of the railroad commission act, is an effort on the part of the legislative assembly to violate the obligation of a contract. The organic law of the State, in force when the Lents contract was executed, contained a clause as follows: "Corporations may be formed under general laws, but shall not be created by special laws, except for municipal purposes. All laws passed pursuant to this section may be altered, amended, or repealed, but not so as to impair or destroy any vested corporate rights." Section 2, Article XI, Constitution of Oregon.

4. Another provision of the fundamental law is invoked, to-wit: "No * * law impairing the obligations of contracts, shall ever be passed." *Id.* Article I, Section 21.

5. In *Ex parte* Koehler (C. C.) 23 Fed. 529, in construing the foregoing clause, interdicting the deterioration or extinction of any established privilege of a corporation, it was held that a railway company formed under the general corporation act of Oregon had a vested right to collect and receive a reasonable compensation for the transportation of persons and property over its road, which the legislature could not impair or destroy. The reasonable compensation thus guaranteed to a common carrier is a standard which necessarily fluctuates, so that a rate which would, when adopted, have been deemed justifiable, may not thereafter be so regarded, owing to the increased traffic and the improved facilities whereby the cost of transportation is lessened. The authority of a railroad company to collect reasonable fares and charges, though a vested right, is, like all other interests, subject to the police power of the State, which may be exercised to promote the public welfare, and to establish between the common carrier and the passenger or the shipper, rules calculated to prevent conflict of rights and to insure to each the uninterrupted enjoyment of his own, so far as reasonably consistent with a like enjoyment of rights by others. Cool. Const. Lim. (6 ed.) 704. Thus in *Bullard v. Northern Pac. R. R. Company*, 10 Mont. 168 (25 Pac. 120: 11 L. R. A. 246), it was held that under the provisions of the interstate commerce law (Act Cong. Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) a contract, made prior to the passage thereof, for the transportation of freight at a rate and on terms violative of that law, could not be enforced against the carrier to recover rebates due upon goods carried after such act went into effect.

6. A grant by the legislative assembly to a corporation of authority to employ the right of eminent domain necessarily implies a reservation of the police power to regulate and prescribe the measure of compensation which

is determined to be reasonable, and which may be collected for transportation of passengers and freight; and, if a common carrier could, by a contract stipulating the continuance of a specified rate of fares and freight for a given time, prevent any interference with such agreement, by invoking the clauses of the organic act relied upon herein, it would thereby become superior to the legislature, which doctrine will never be acknowledged by courts. The police power, being necessary to the preservation of the rights of the citizen and to the maintenance of the autonomy and the authority of the State, cannot be bargained away in any manner whatever. Cool. Const. Lim. (6 ed.) 340.

7. A contract of the kind supposed will be assumed to be valid until abrogated by the sovereign which prescribes different rates.

It is doubtful if the question here adverted to is involved, for neither the order of the Railroad Commissioners, nor the decree confirming it, attempts to change in any manner the terms of the agreement relating to the transportation of passengers from Lents over the Mt. Scott division to or through the city of Portland. The contract rate of 5 cents, however, was taken as the basis of a reasonable compensation by which to measure the fare to be charged on the Oregon City division for an equal distance, and for conceding the same transfer privileges that are granted on the Mt. Scott division. The terms of the Lents contract probably prevent the plaintiff from charging as great a rate of fare on that division as is now collected on other lines operated by it outside the city limits, and the only way in which it can escape a violation of the provisions of Section 48 of the railroad commission law is by reducing the charges on such other lines to the same proportion as is received on the Mt. Scott division. In this particular only can it be said that the obligation of a contract is in any way affected by this act

of the legislature. No vested corporate rights have been diminished or destroyed thereby.

8. It is insisted that the cost of constructing the Mt. Scott division was 50 per cent less per mile than that of the Oregon City division, that the number of passengers on the latter line, north of Milwaukie, is less than one-twentieth of those over the Mt. Scott division, and that the service performed is so dissimilar, and rendered under such diverse circumstances and conditions, as to make the difference in fares between Lents and Portland and between that city and Milwaukie not unjustly discriminatory against the latter town. In the vicinity of the Mt. Scott division is a district between the city boundary and the town of Lents which contains many people, and, based on this fact, it is argued that the Lents contract, in effect, makes such territory a part of Portland, and extends to the inhabitants of that locality the 5-cent fare, that, considering the question of unjust discrimination, the comparison of fares must be a relative estimate of the respective distances from the city boundary, and that for all practical purposes the remoteness from the Portland terminal should be computed as if all such district were within the corporate limits of that city. The 5-cent rate of transportation for a continuous trip in one direction between any two points extends by compulsion to the boundary of Portland (Section 2096, B. & C. Comp.), where the second district of rates begins, unless the first division is voluntarily continued beyond that circuit. As fares outside that city on suburban lines of railway now consist of multiples of 5 cents, all 10-cent rates would be expected to begin at the point of intersection of the line of the road and the city boundary, from which place the extent of the second district should be computed. By making the limits of the municipality the beginning of all 10-cent fares no discrimination against any locality can exist, except such as the peculiar form of the boundary

may sanction; and the several districts, coinciding with the respective multiples of 5 cents, ought to be parallel with the exterior boundaries, if the railway lines were built at right angles thereto. The density of the population along the Mt. Scott division, between the city limits and the town of Lents, does not make that territory a part of Portland, nor can the Lents contract, in effect, incorporate such district within that city.

Section 48 of the Railroad Commission law makes it an offense for any railroad company to collect for carrying one person more than it demands from another "for a like and contemporaneous service." Though the clause of our statute from which the last-quoted excerpt is taken does not contain the expression "under substantially similar circumstances and conditions," as is found in Section 2 of the interstate commerce law, it is asserted by counsel for plaintiff that such phrase is reasonably implied in our enactment in construing which it should be held that there can be no "like service," unless it is for carriage over the same line, and hence any difference in charges for transporting persons over another branch of the plaintiff's road is not prohibited or unjustly discriminatory. The legislative assembly of this State, in framing Section 48 of the Railroad Commission law, patterned it somewhat after Section 2 of the interstate commerce law, and it would seem that the phrase "under substantially similar circumstances and conditions" had been purposely omitted from our enactment. This act of Congress was designed to correct unjust discriminations in charges for the transportation of passengers and freight from one state or territory to another, while our law is applicable only within the State of Oregon. The great transcontinental railways of our country necessarily cross the Rocky Mountains, from the summit of which freight can be hauled in cars down grade to the Pacific Coast or to the Atlantic Ocean much cheaper than goods can be trans-

Sig. 16

ported from points on the respective seaboards to the utmost height of such mountains. The general movement of freight on such lines of railway may only be in one direction, and loaded cars which were hauled to their destinations would be returned empty unless goods for transportation could be obtained, to secure which less charges are frequently made than the cost of the service will warrant. So, too, at some seasons of the year shipments of freight may change their course, and the charges for transportation must be altered to meet the varying conditions and to avoid the necessity of returning cars empty. These facts were undoubtedly considered in framing Section 2 of the interstate commerce law, and induced the insertion therein of the phrases "a like and contemporaneous service," and "under substantially similar circumstances and conditions," the latter of which seems purposely to have been omitted from our law on the subject. The absence of such clause from our statute leads to the conclusion that the phrase "a like and contemporaneous service," as employed therein, is not limited to transportation over the same line, but extends to service rendered on other lines operated by the same railway company, and particularly so when electric cars are used on urban, suburban, or interurban railroads. The cost of constructing and maintaining a portion of a railway, and the volume of business on one part of the line when compared with another, may make the operation of one section much more remunerative than another, but the net revenue upon which dividends are declared is not based on particular divisions of the road, but upon the entire system.

9. Quite an array of figures are set forth in the brief of plaintiff's counsel, and facts are stated therein in support of the contention that the rate of transportation and the privileges prescribed in the order and decree complained of will not furnish a reasonable return upon the capital

invested, and that the maintenance of the existing fares is necessary to supply such recompense, that neither the defendant nor the court can speculate as to the probable effect upon the plaintiff's business or upon the consequences of any change in the population or in the value of property in the affected district, and that, if any reduction is proper, an arbitrary diminution of 50 per cent as to Milwaukie is excessive, unjust, and unreasonable. We do not thing it necessary to discuss either of these questions; for the plaintiff, having agreed to accept a fare of 5 cents for carrying passengers between Portland and Lents, thereby asserted the value of the employment so rendered, by which measure it must be governed for similar service on the Oregon City division an equal distance beyond the boundaries of the city of Portland. As illustrating this principle, it is said in *Menacho* v. *Ward,* (C. C.) 27 Fed. 529, 532:

"The estimate placed by a party upon the value of his own services of [or] property is always sufficient, against him, to establish the real value; but it has augmented probative force, and is almost conclusive against him, when he has adopted it in a long-continued and extensive course of business dealings, and held it out as a fixed and notorious standard for the information of the public."

It will be remembered that the rate to Lents was established pursuant to the terms of an agreement, but it appears that the plaintiff voluntarily made a 5-cent fare on the Springwater division from Portland to Nickum, which latter place is .56 mile outside the city limits, and thereby manifested a preference for Nickum as against Milwaukie, which is 1.35 miles outside such boundary. The reason assigned in the brief of plaintiff's counsel for such discrimination is that where the Springwater division crosses the city limits, the roadbed consists of, a high fill that extends east quite a distance to a deep cut, which latter continues beyond Nickum; that at the boundary no public highway exists by which passengers can approach

the railroad; that the nearest place where the railway can be reached without trespassing on private land is at Nickum; and that in consequence of such obstacles the cars cannot be stopped at the city limits. A passenger would be entitled to ride on this division from Portland to the city boundary for a 5-cent fare; and, if he refused to pay a greater sum for further transportation, he could be ejected from the cars at that place. Whether or not he could leave the track without going up or down it to some station where a public highway could be found is a question that affects the plaintiff only to the extent that the absence of such road or street might have a tendency to diminish travel, to overcome which and to promote the interests of the railway company, passengers are carried to Nickum. This, in our opinion, under the present statute, amounts to a discrimination. The 10-cent fare between Portland and Milwaukie is not unreasonable when compared with the charges made by other railway companies for similar service, but the Railroad Commission law authorizes an investigation upon a complaint as to a charge which is in any respect "unreasonable or unjustly discriminatory." Section 28. It is not necessary, therefore, that the rate charged should be unreasonable, for if it is unjustly discriminatory, it is sufficient to authorize a regulation thereof. An examination of the evidence fully justifies the finding, made by the trial court in confirming the order of the Railroad Commission, that the rate from Portland to Lents and from such city to Nickum, and the transfer privilege granted to passengers on the Mt. Scott and the Springwater divisions, are unjustly discriminatory as against Milwaukie.

It follows from these considerations that the decree herein should be affirmed, and it is so ordered.

AFFIRMED.

Decided June 7, 1910.

## ON PETITION FOR REHEARING.

[109 Pac. 273.]

MR. JUSTICE SLATER delivered the opinion of the court.

10. Plaintiff has presented an elaborate petition for rehearing, amounting practically to a re-argument of the whole case. The broad position is taken that the Railroad Commission act, the orders of the commission, and the decisions of the court, are in violation of Section 1, Article XIV, of the Constitution of the United States, prohibiting any state from depriving any person of property without due process of law, or denying to any person within its jurisdiction equal protection of the law. We have carefully considered the able argument of counsel in support of this contention, but find ourselves unable to assent to their conclusions. The several principles of law stated in the argument are undoubtedly sound, and not to be questioned, but in applying the reasons of the law to the facts of the case we fail to fully agree with counsel. The principles are that a corporation is a person within the meaning of the fourteenth amendment, which forbids the State to deny to any person within its jurisdiction the equal protection of the laws, and prohibits the taking of property without due process of law; that the fixing and enforcement by a railroad commission of unjust and unreasonable rates for transportation by railroad companies is an unconstitutional denial of the equal protection of the laws.

11. A corporation cannot be required to use its property for the benefit of the public without receiving just compensation for the services rendered by it; and that the requirements of the fourteenth amendment apply both to privileges conferred and liabilities imposed, and no greater burdens should be imposed upon one than are laid upon others in the same calling and condition. The

complaint made to the commission against plaintiff involved two causes of alleged unjust and unreasonable discrimination as against the town of Milwaukie—one in charging a higher rate of fare to the citizens thereof than was charged the citizens of the town of Lents, under like and contemporaneous service; and the second in giving to the latter transfers to other lines in the city of Portland, which transfers were denied the former.

12. As to the second of these questions, it is now maintained for the first time that the order of the commission requires plaintiff to furnish such transfers to its passengers traveling from Milwaukie station into Portland, and that, to that extent, the order affects the rights of another corporation not a party to the proceedings, for which reason, if for no other, the order would be void. It is contended that at the time of the hearing before the commission the plaintiff was the owner and operator of the three lines of railway described in the pleadings; that the Portland Railway Company, another corporation, was the owner of and operated all other street railways in Portland, and that the transfers spoken of in the record secured the privilege of traveling on such other street railways without the payment of additional fares; that if plaintiff were required by order of the commission to furnish transfers to its passengers from the town of Milwaukie, and required that they be accepted by the owner of the railways to whom they were directed, the effect thereof would be to bind such owner, without it having been permitted to be heard. The Railroad Commission's order in that respect is not a positive command to the plaintiff to give transfers, nor that they be accepted by any one, but the order is, in effect, to cease an unlawful discrimination between the passengers from Lents and those from Milwaukie by desisting from refusing the latter the same transfer privileges as accorded to the former, and that plaintiff should furnish to all persons

paying the rates of fare fixed by the commission in its order the same transfer privileges accorded Lents passengers. The order of the commission would, therefore, be complied with by giving such transfers to all, as plaintiff saw fit to continue to give to Lents passengers, or by desisting entirely from its practice of giving transfers to Lents passengers. Which of these two courses is to be taken is left to plaintiff's option. It was not bound in the first place by any mandate of the law, or by any contractual obligation of its predecessor in interest, or of itself, to furnish transfers to Lents passengers. The giving of them was purely voluntary, and a gratuity, which, being refused to its other patrons, constituted an unlawful discrimination. This is within the power of the board to rectify by an order directed to the plaintiff alone.

13. Upon the other question, the discrimination as to the amount of fare charged the respective communities by plaintiff, we are not entirely free from doubt as to the proper remedy. It was said in the main opinion that "the 10-cent fare between Portland and Milwaukie is not unreasonable when compared with the charges made by other railway companies for similar service." Using that statement as a premise for an argument, it is urged in the motion that such statement is a finding that the specified rate is *per se* reasonable, which giving effect to the constitutional guaranties heretofore noted, precludes the State or its agent from making any reduction. But it was stated in immediate connection with that remark that the law authorizes an investigation upon a complaint as to a charge, which is in any respect "unreasonable or unjustly discriminatory." "The fact that a rate is *per se* reasonable does not disprove the charge that it is unlawful," say Messrs. Beale and Wyman in their work on Railroad Regulation, at Section 839. "If rates are relatively unjust, so that undue preference is afforded to one locality or undue prejudice results to another, the law is

violated and its penalties incurred, although the higher rate is not in itself excessive." The question presented for consideration is not the reasonableness *per se* of the charge, but its reasonableness considered in relation to charges made by plaintiff at other localities on its system for like and contemporaneous service; for the statute, as we have construed it, forbids undue preference or discrimination between localities. Circumstances, however, may so explain the difference between rates compared as to deprive the lower rate of any bearing on the higher, but the discrimination, without an excuse recognized by the law, would be in and of itself unjust and unreasonable. Beale and Wyman, Section 838.

Plaintiff justifies the lower charge to and from Lents to the terminus in the city of Portland, first, on the ground that it is prevented from charging each passenger more than five cents fare, because of the alleged contract between its predecessor and the former owner of that portion of the road extending between Lents and Hawthorne Avenue. But this arises from the wrongful act of the plaintiff and its predecessor; that it, it had no lawful right or power, as was held in the main opinion, to thus bind the State or restrict it in its future regulation of fares. On account, however, of the forfeiture clause of this contract, it was doubtless considered by the commission that to order plaintiff to increase the rate of its fare at Lents in order to avoid the discrimination complained of would cause it to hazard a greater loss than to lower the rate of fare at Milwaukie. It therefore chose the latter, and under the circumstances of the case we think it was justified in so doing, inasmuch as the forfeiture clause of the contract expires by limitation on April 30, 1911, after which time plaintiff will be free to act upon its own judgment in the premises, and so to arrange its schedule of fares as to avoid any just complaint of discrimination.

14. Plaintiff's second justification of the discrimination is that the cost of the construction of the line to Lents is 50 per cent less than that of the line to Milwaukie, and in this connection it is also alleged that the agreement with plaintiff's predecessor to make a rate of fare not exceeding five cents to the people of Lents is based upon a consideration, being the value of the roadbed conveyed to plaintiff's predecessor in consideration of that agreement, but the right of one locality is not thereby increased, nor is the equal right of a competing locality diminished by municipal or other subscriptions advanced for the building of the road. Beale and Wyman, Section 839.

It is also complained that the reduction of the rate from 10 to 5 cents at Milwaukie and from 15 to 10 cents at Oak Grove will entail upon plaintiff a considerable loss by compelling it to make equivalent reductions along the entire line to Oregon City. We do not think this necessarily follows, but, if it should, we are of the opinion that the consequences contemplated would result from the arbitrary manner by which plaintiff has divided its road into five-cent zones for regulating the amount of its charges, and for these reasons we think it ought not to be heard to complain.

15. It is also claimed in the motion that the State, and hence its agent, the Railroad Commission, has no power to regulate fares within the limits of the city of Portland, because that right has been delegated to the city, and also because the city in granting plaintiff its franchise has limited the plaintiff to a charge of five cents for any single fare, in one general direction, within the city of Portland. It is further claimed that such right is a vested contractual right. Assuming that these claims are well founded, still we do not see that the order of the commission attempts to regulate fares within the city, for it operates only upon traffic originating or extending beyond the boundaries of the corporate limits. The general grant of

power contained in the city charter of 1903 is "to prescribe rates to be charged for transportation of passengers or property within the limits of the city, etc. Sess. Laws 1903, Section 73, par. 71. On the other hand, the special limitations of the power of the commission is "that this act shall not apply to the transportation of passengers being carried solely within the limits of cities by street and other railroads." Sess. Laws 1907, Section 11, p. 71. The distinction between the two respective grants of power and that exercised by the commission in making the order sought to be set aside in this proceeding is clear and obvious.

The motion therefore will be denied.

AFFIRMED: REHEARING DENIED.