PACIFIC TELEPHONE & TELEGRAPH CO. v. WRIGHT–DICKINSON
HOTEL CO. et al.

(District Court, D. Oregon.  May 4, 1914.)

No. 6248.

1. TELEGRAPHS AND TELEPHONES (§ 26½, New, vol. 17 Key-No. Series)—POW-
ER TO REGULATE—INTERCHANGE OF BUSINESS.

Sess. Laws Or. 1911, p. 483, authorizes the railroad commission to su-
pervise and regulate "public utilities," defined by section 1 as embracing
any plant or equipment for the conveyance of telephone messages.  Sec-
tion 4 provides that "service" is to be taken in its broadest and most in-
clusive sense and as including equipment and facilities.  Section 6 au-
thorizes the commission to supervise and regulate such public utilities
and do all things necessary and convenient in the exercise of such power
and jurisdiction, and section 8 provides that all public utilities shall af-
ford all reasonable facilities and make all necessary regulations for the
interchange of business or traffic when ordered by the commission.  Sec-
tion 43 provides that the commission, if it finds that any regulation,
measurement, practice, act, or service is unjust, unreasonable, insufficient,
preferential, unjustly discriminatory, or otherwise in violation of any
of the provisions of that act, or that any service cannot be obtained or is
not afforded, may substitute therefor such other regulations, measure-
ments, etc., and make such orders respecting, and such changes in such
regulations, etc., as shall be just and reasonable.  Held, that the commis-
sion is authorized to require physical connection between the lines of
different telephone companies so as to facilitate an interchange of busi-
ness between them.

2. EMINENT DOMAIN (§ 2*)—POWER TO REGULATE—TELEPHONE CONNECTION
—INTERCHANGE OF BUSINESS.

Where a telephone company under contract with a hotel company in-
stalled in a hotel a limited telephone service, including telephones in the
hallways and other semipublic places and a private branch exchange, it
was not an exercise of the power of eminent domain or a taking of its
property without just compensation, for the railroad commission of the
state to require it and another company having a complete system of
telephones in such hotel, including telephones in the various rooms, to
make a physical connection of their respective systems, so that they
might be used interchangeably by the hotel, its guests and patrons; such
company to be paid for each call transferred to its system from the sys-
tem of the other company a sum found by the commission to be reason-
able.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 3–12;
Dec. Dig. § 2.*]

In Equity.  Suit by the Pacific Telephone & Telegraph Company
against the Wright-Dickinson Hotel Company and others.  On applica-
tion for an interlocutory injunction.  Denied.

The plaintiff, the Pacific Telephone and Telegraph Company, hereinafter to
be called the "Pacific Company," owns and operates telephone and telegraph
lines in a number of the Pacific Coast states, including California, Oregon,
and Washington, and it also owns and operates a telephone system in the
city of Portland.  It is a common carrier for hire, and transacts its business
partly through local exchanges, including Portland, and partly over long
distance lines extending through the states designated.  Its system of tele-
phones is known as the manual system.

The defendant Home Telephone & Telegraph Company, herein called the
"Home Company," is the owner and engaged in the operation of a telephone

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

exchange within the city of Portland. It has no lines of its own extending beyond the city, but in general transacts long distance business over the lines of the Northwestern Long Distance Telephone Company, extending from Corvallis, in Oregon, through Portland, and to Tacoma and Seattle, in Washington. This company has the automatic system of telephones.

The defendant Wright-Dickinson Hotel Company, for several years prior to January 29, 1913, was engaged in conducting and operating what is known as the Oregon Hotel, and at the instance of such company the Pacific Company installed in such hotel its switchboard and telephone instruments, and connected the same by suitable trunk lines with its central station in Portland, and moreover furnished throughout said building a complete system of wiring, connecting the said switchboard with the various rooms and other places in said hotel, convenient for the use of the hotel and the public, and affording adequate telephone service to the hotel and its patrons, both locally and for long distance.

Later S. Benson constructed a hotel adjoining the Oregon, the operation and management of which were also taken over by Wright-Dickinson Hotel Company. The new building was, under contract with the Home Company, provided with wires suitable for operating a complete system of telephones therein, and thereupon the Pacific Company discontinued its use of its wires extending to the rooms in the old building, and sold the same to the Home Company, and the latter company connected the wires in both buildings to form one system of telephones throughout, and has since been furnishing its telephone facilities to the Hotel Company through its own private branch exchange, and by means of its own wires, switchboard, and trunk line.

Notwithstanding this arrangement with the Home Company, however, the Pacific Company, under contract with the Hotel Company, installed in the hotel buildings what is styled a limited telephone service, establishing telephones in the hallways and other semipublic and accessible places, including telephone booths in the lobby of the hotel. This service comprised a private branch exchange, including a switchboard adequately connected by trunk lines with its central station.

About March 20, 1913, the Wright-Dickinson Hotel Company, Charles Wright, and M. C. Dickinson petitioned the Railroad Commission of Oregon to require the Pacific Company and the Home Company to make physical connection of their respective systems with each other, so that they might be used interchangeably by the hotel and its guests and patrons. After due notice and a hearing, the commission granted the prayer of the petition, and thereafter the Home Company made the physical connection by means of a keyboard adjusted between the switchboards of the respective companies.

The commission found, among other things, that "It is entirely feasible from mechanical and technical standpoints to connect the two switchboards of the Pacific and Home Companies in Hotel Oregon at a nominal expense so that telephonic traffic can be interchanged between the Pacific Company's system and the various telephones of the Home Company's system located in such hotel, without impairing the efficiency of service of either the Pacific Company or Home Company, or any part thereof, and without the necessity for additional investment by any of the parties to this proceeding, and without involving a duplication of equipment and facilities, and without in any way interfering with the competition between such companies."

It was further ordered that the expenses of making the connection should be borne by the Hotel Company, and the expense of maintenance equally by the telephone companies. The commission further found that a reasonable compensation to be paid the Pacific Company by the Hotel Company, and a reasonable toll and charge to be made by the Pacific Company for the service to be performed by it through such physical connection, is the sum of $3\frac{1}{3}$ cents for each call going out from such hotel and transferred from the switchboard of the Home Company to that of the Pacific Company, in addition to the sums now reserved by the existing contract between the Pacific and Hotel Companies for private branch exchange service.

The Pacific Company resists the order of the Railroad Commission, and seeks by the present suit to have the commission enjoined from enforcing compliance with the same.

Subsequently the complainant filed a supplemental bill, by which it is shown that the Wright-Dickinson Hotel Company has surrendered to S. Benson the new hotel, and has ceased to operate the same, and that the same is now being conducted by the Benson Hotel Company as a separate hotel from the Oregon, which latter is still under the management of the Wright-Dickinson Hotel Company. The wiring in both buildings remains as before, and the switchboards remain the same, excepting that a connection has been made between them by Wright-Dickinson Company and the Home Company under the order of the Railroad Commission. The Benson Hotel Company is operating the private exchange switchboards described in the original bill, in the new building, in like manner as they were operated by the Oregon Hotel prior to the time the hotels were placed under separate management.

In pursuance of the prayer of the supplemental bill and the stipulation of the parties, the Benson Hotel Company is made a party to the suit, but the relief sought is the same as under the original bill, except that the Benson Hotel Company is brought within its scope.

H. D. Pillsbury, of San Francisco, Cal., and Carey & Kerr, of Portland, Or., for plaintiff.

Wood, Montague & Hunt, of Portland, Or. (Clyde B. Aitchison, of Portland, Or., of counsel), for defendants Home Telephone & Telegraph Co. and Railroad Commission of Oregon.

Joseph & Haney, of Portland, Or., for defendants Wright-Dickinson Hotel Co., Charles Wright, and M. C. Dickinson.

E. E. Coovert, of Portland, Or., for defendant Benson Hotel Co.

Before GILBERT, Circuit Judge, and WOLVERTON and BEAN, District Judges.

WOLVERTON, District Judge (after stating the facts as above). [1] Two questions of vital concern are presented by the controversy. The first is whether the Oregon Railroad Commission is authorized and empowered to impose regulation upon telephone and telegraph utilities in the way of requiring physical connection between two or more competing lines, and an exchange of service over such lines; and the second, whether such requirement is the exercise of eminent domain and the taking of property without just compensation, or the taking of property without due process of law, contrary to the inhibition of the federal Constitution.

The first question is adequately answered by the provisions of the Public Utilities Act, passed by the Legislative Assembly of the state of Oregon and afterwards ratified by a referendum to the electorate. Sess. Laws 1911, p. 483. This act has for its purpose the regulation of the public utilities of the state, and the conferring of power and jurisdiction upon the Railroad Commission of the State to supervise and regulate such utilities. The first section defines the term "public utility," which definition embraces, among others:

"Any plant or equipment or part of a plant or equipment in this state for the conveyance of telegraph or telephone messages, with or without wires, * * * whether said plant or equipment or part thereof is wholly within any town or city, or not."

By the fourth section the term "service" is taken to be used "in its broadest and most inclusive sense, and includes equipment and facilities." By section 6:

"The Railroad Commission of Oregon is vested with power and jurisdiction to supervise and regulate every public utility in this state, and to do all things necessary and convenient in the exercise of such power and jurisdiction"—a power and jurisdiction very broad and very comprehensive.

The eighth section, which, among other things, relates to common user of facilities, contains this explicit and pertinent provision:

"All public utilities shall afford all reasonable facilities and make all necessary regulations for the interchange of business, or traffic carried or their product between them, when ordered by the Commission so to do."

Sections 41, 42, and 43 provide the mode or manner by which the commission acquires jurisdiction to act in the premises, and by the latter clause of section 43 the commission is specifically empowered, if upon investigation it shall be found that any regulation, measurement, practice, act, or service complained of is unjust, unreasonable, insufficient, preferential, unjustly discriminatory, or otherwise in violation of any of the provisions of the act, or if it be found that any service cannot be obtained or is not afforded, to substitute therefor such other regulations, measurements, practices, service, or acts, and to make such order respecting, and such changes in such regulations, measurements, practices, service, or acts as shall be just and reasonable.

Considering the explicit purpose of the act, and these ample provisions, it would seem that nothing further is needed or requisite for conferring upon the commission adequate power and authority for the regulation of interchange of business between telegraph and telephone companies, which, by the very nature of things, comprises and includes the power to require physical connection between competing utilities for facilitating such interchange of business. In other words, the power to regulate within the purpose and spirit of the act includes the power to require physical connection; otherwise regulation would prove largely ineffectual in practical application.

We are not impressed with the suggestion that this power of regulation must be specifically conferred by constitutional authority.

This disposes of the first question.

[2] As to the second question, we are impressed that it is controlled by the authority of Wisconsin, M. & P. Railroad v. Jacobson, 179 U. S. 287, 21 Sup. Ct. 115, 45 L. Ed. 194, and afterwards reaffirmed in Grand Trunk Ry. v. Michigan Ry. Comm., 231 U. S. 457, 34 Sup. Ct. 152, 58 L. Ed. 310. See, also, Jacobson v. W. M. & P. R. R. Co., 71 Minn. 519, 74 N. W. 893, 40 L. R. A. 389, 70 Am. St. Rep. 358. In the first case it is said that:

"If power were granted by the Legislature, and it amounted in the particular case simply to a fair, reasonable, and appropriate regulation of the business of the corporation, when considered with regard to the interests both of the company and of the public, the legislation would be valid, and would furnish, therefore, ample authority for the courts to enforce it."

These cases, it is true, relate to a physical connection required by a local commission to be made between railroads, but the analogy to a case where a physical connection is required to be made between telegraph and telephone utilities is patent and obvious. The Pacific

Company is required to accept the messages from the hotels and transmit them, for which service the commission awards it a compensation of 3⅓ cents for each call going out from the hotels and transferred from the switchboard of the Home Company to that of the Pacific Company. For any transmission of messages it may make over its long distance lines it receives its own charges, and for local messages its tolls for instruments installed, in addition to the compensation allowed for the call, and the compensation stipulated for under its contract with the Hotel Company for putting in and maintaining trunk lines, switchboards, and booths is not interfered with.

The commission has said that the charge of 3⅓ cents is reasonable for each call going out of the hotels, and with this we are not now concerned.

Now càn it be said that the requirement that the Pacific Company shall accept the messages from the hotels and transmit them, it receiving a reasonable consideration for each call, is an exercise of eminent domain and a taking of the plaintiff's property without just compensation?

It is not a new or different use or burden that is required by the service, nor does another or different person, corporation, or entity occupy or utilize the lines or system of the plaintiff company. It is still left in the full and unrestricted occupancy and operation of its own lines or system, except that it is required to observe and comply with a regulation that the commission has deemed proper to impose upon it, namely, that it transmit also the messages coming from the hotels which originate on the wires of the Home Company. This is not a taking of the plaintiff's property in any sense. It is but a reasonable regulation which is properly referable to the police power of the state. See Pioneer Telephone & T. Co. v. Grant County Rural T. Co., 119 Pac. 968; Pioneer Telephone & Telegraph Co. v. State, 38 Okl. 554, 134 Pac. 398.

The opposite view is entertained in an exhaustive and ably considered case from California (Pacific Telephone & Telegraph Co. v. Eshleman, 137 Pac. 1119) but we are unable to give assent thereto.

We come all the more readily to our conclusion in view of the decree recently rendered in the District Court in the case of United States v. American Telephone & Telegraph Co. et al. (no opinion filed), and in which the plaintiff herein was a party defendant, whereby, upon assent of the parties defendant, various telephone and telegraph companies were ordered and directed to make physical connection of their systems and accept interchange of business and communication. Thus the plaintiff has in effect conceded the principle we announce.

It follows furthermore that there has been no taking of property without due process of law; nor has there been a violation of the interstate commerce clause of the Constitution. See Jacobson v. W. M. & P. R. R. Co., supra.

These considerations lead to a denial of an interlocutory injunction, and such will be the order of the court.