Argued July 12, affirmed August 1, 1916.

## FIRST NAT. BANK v. PACIFIC TEL. & TEL. CO.

### (159 Pac. 561.)

**Telegraphs and Telephones — Compelling Connection Between Companies—Injunctive Relief.**

1. Where a bank installed in its building a private intercommunicating telephone system, with its own instruments, with which the H. telephone company connected, the bank could not in suit against the P. telephone company, have injunctive relief to compel the latter to connect its system to the bank's thus effecting a connection of the two telephone systems, competitors, the H. company not being a party to the suit, until the Public Service Commission fully considered all questions involved; injunction being an extraordinary remedy, which will not be granted unless the Public Utilities Act (Laws 1911, p. 483) will work harmoniously as a result.

[As to power of state or Public Service Commission to compel public service corporations to make connections with each other, see note in Ann. Cas. 1915C, 850.]

From Linn: William Galloway, Judge.

Department 1. Statement by Mr. Justice Bean.

This is a suit by the First National Bank of Albany, a corporation, against the Pacific Telephone & Telegraph Company, a corporation, and George E. Sanders, and was instituted for the purpose of permanently enjoining the defendants from disconnecting or in any manner interfering with or changing the present

telephone connection between the lines of the defendant telephone company and the telephone system owned and operated by the plaintiff in its banking institution existing in the City of Albany, Oregon. The Circuit Court rendered a decree dismissing the plaintiff's complaint, from which plaintiff appeals, assigning a number of errors.

Plaintiff is the owner of a five-story reinforced concrete building, the first floor of which is occupied by the plaintiff as a banking institution, the remainder of the building being used for office purposes. During the construction of the building in 1912–13, the plaintiff caused to be installed therein telephone conduits, and upon the completion thereof installed a complete telephone system connecting all the various offices in the bank and the offices of the First Savings Bank, another institution of the plaintiff situated in another building about one block distant, and also installed public stations therein for the use of its patrons. The telephone system can be operated from any station by means of an automatic keyboard, whereby direct connection is effected with the main switchboard. Upon the completion of the building the Home Telephone Company, a public service corporation and the owner of a competitive telephone system in the City of Albany, connected its trunk line with the main switchboard of the telephone system of plaintiff. About the same time the defendant company installed a telephone station in the bank building and afterward the defendant company's trunk line was, at the instance of plaintiff and without the consent of the defendant company, connected with one of the cables of plaintiff's telephone system, and thereby connection was made with the main switchboard of plaintiff's intercommunicating telephone system. All the incoming and out-

going telephone communications over both the Home and Pacific companies' lines were conducted by means of the instruments used by the plaintiff in its system as well as all intercommunications between various offices in the two banking institutions. Plaintiff occupied the building September 1, 1913. During that month the Pacific company objected to the connection which had been made with the plaintiff's intercommunicating system and the Home Telephone system, and informed the plaintiff that it would disconnect its service, whereupon plaintiff instituted this suit and obtained a temporary injunction restraining the defendant from so doing.

The Pacific company answered and affirmatively alleged that it undertakes to furnish telephone service by means of equipment owned, installed, and maintained by it without connection with the system of other telephone companies or with privately owned equipment. Temporary arrangements were made at the suggestion of the chairman of the Public Service Commission for service of the Pacific Telephone in the plaintiff's bank which was understood to be without prejudice to defendants' case.    Affirmed.

For appellant there was a brief over the name of *Messrs. Schmitt & Schmitt,* with an oral argument by *Mr. G. G. Schmitt.*

For respondents there was a brief over the names of *Mr. Omar C. Spencer* and *Messrs. Carey & Kerr,* with an oral argument by *Mr. Spencer.*

Mr. Justice Bean delivered the opinion of the court.

1. It not being shown by the record that the Pacific company voluntarily connected its system with plaintiff's intercommunicating system or the Home Tele-

phone system, the suit in effect is to compel the desired connection. The Pacific company asserts that it holds itself out to provide all the instrumentalities and facilities necessary and essential to the furnishing of telephone service. It is not engaged in furnishing service which consists of connecting privately owned equipment with its own instrumentalities and lines.

At the threshold of this case we are met by the contention of counsel for the Pacific company that the Circuit Court has no original jurisdiction over the regulation of public utilities such as the Pacific Telephone system; that the power of regulation is conferred upon the Public Service Commission by virtue of the Session Laws of 1911, page 483, known as the Public Utilities Act, which was passed by the legislative assembly and afterward ratified upon a referendum to the people.

Section 6 of this act provides as follows:

"The Railroad Commission of Oregon (now Public Service Commission) is vested with power and jurisdiction to supervise and regulate every public utility in this state, and to do all things necessary and convenient in the exercise of such power and jurisdiction."

Section 54 of the act provides for a review of any order or procedure before the Public Service Commission by a suit in the Circuit Court of the county in which the hearing was held against the commission as defendant to vacate and set aside any such order or specified portion thereof on the ground that the order or portion thereof is unlawful. That right or recourse to the courts should be exercised within 90 days after the rendition of such order or determination. It is urged on behalf of the defendant company that this act provides a complete, adequate plan for the determination of all matters connected with the regulation

of public utilities; that the bank by this proceeding is endeavoring to make of the Circuit Court a body of equal original jurisdiction with the Public Service Commission, in such matters which has no sanction in law.   We are referred to the case of *Ford* v. *Oregon Elec. Ry. Co.,* 60.Or. 278 (117 Pac. 809, Ann. Cas. 1914A, 280, 36 L. R. A. (N. S.) 358), where the plaintiff sought specific performance from the railway company, of a contract to stop local trains at a road crossing on the land of plaintiff.   In the determination of the case we discussed the Railroad Commission Act and held that the regulation of the stopping of trains is a duty imposed in the first instance upon the railroad commission of the state under the provisions of Chapter 53, Laws of 1907, page 67, known as the Railroad Commission Act, Section 6875 et seq., L. O. L.; that under the present *régime,* if a court of equity should take cognizance in the first instance, regardless of the general plan of the railroad commission, it would doubtless tend to a confusion of results to the detriment of the public interests.   Under the law the orders of the commission may be rescinded or amended from time to time according to change of conditions or requirements of necessity.

The Public Utilities Act further amplifies the general plan of regulation by the Public Service Commission in Oregon subjecting more utilities to regulation so that even greater confusion in the matter of control would follow if the various Circuit Courts of the state were held to have original jurisdiction with the Public Service Commission in the regulation of public utilities.   The power of the Public Service Commission to regulate was discussed in *Portland Ry., L. & P. Co.* v. *City of Portland* (D. C.), 210 Fed. 667, in which case the city attempted to regulate the rates of

the utility. United States District Judge Bean held that under the Public Utilities Act the authority to regulate was conferred in the first instance exclusively upon the Public Service Commission, saying:

"There cannot be two public bodies existing at the same time with original jurisdiction to prescribe and fix the only lawful rates to be charged by a public utility. * * The purpose (of the Public Utilities Act) was to provide a uniform system throughout the entire state for the control and regulation of public utilities and fixing the rates to be charged by them, and to create a tribunal for that purpose."

In *Pacific Telephone & Telegraph Co.* v. *Wright-Dickinson Hotel Co.* (D. C.), 214 Fed. 666, District Judge Wolverton, in speaking of the Public Utilities Act, said:

"This act has for its purpose the regulation of the public utilities of the state, and the conferring of power and jurisdiction upon the railroad commission of the state (now the Public Service Commission) to supervise and regulate such utilities. * * By Section 6 'the Railroad Commission of Oregon (the Public Service Commission) is vested with power and jurisdiction to supervise and regulate every public utility in this state, and to do all things necessary and convenient in the exercise of such power and jurisdiction'—a power and jurisdiction very broad and very comprehensive."

It is further urged on behalf of the Pacific company that if it be assumed that the Circuit Court has original concurrent jurisdiction with the Public Service Commission in regulating public utilities in Oregon, that there is no authority to compel a telephone company to connect with the private equipment of a subscriber. The particular facts relating to this phase of the case should be borne in mind. The bank has installed what is called a private intercommunicating system. This is composed of wires running through

the bank, upon which are located various telephone stations. At each of these stations the bank has installed its own instruments, and a person may communicate from one of these stations with a person at any other station on the system by taking down an instrument and giving the proper signal. This private system is owned, controlled and maintained by the bank. It is insisted on behalf of the Pacific company that this intercommunicating system was installed with the bank at a time when it knew that the Pacific company furnished its own intercommunicating system to which it willingly connected, but that the Pacific company did not connect with any private system or instrument over which it had no control. The bank installed its private system and a connection was made between this and the lines of the Home company in Albany. Thereafter the bank, without any authority from the Pacific company and without any knowledge on its part, connected a trunk line of the Pacific company which had been installed running to a booth in the bank for temporary service with the private intercommunicating system of the bank. This suit was instituted to legalize such connection or practically to enforce a connection by the Pacific company with the private intercommunicating system of the plaintiff and the system of the Home Telephone Company.

Section 7 of the Public Utilities Act provides as follows:

"Every public utility is required to furnish adequate and safe service, equipment and facilities, and the charges made by any public utility for any heat, light, water or power produced, transmitted, delivered or furnished or * * for any transportation of persons or property by street railroad, or for any service rendeed or to be rendered in connection therewith shall be reasonable and just, and every unjust or unreason-

able charge for such service is prohibited and declared to be unlawful."

By Section 64 of the act it is made unlawful "for any public utility to demand, charge, collect or receive from any person, firm or corporation less compensation for any service rendered or to be rendered by said public utility in consideration of the furnishing by said person, firm or corporation of any part of the facilities incident thereto: Provided, nothing herein shall be construed as prohibiting any public utility from renting any facilities incident to * * the conveyance of telephone messages and paying a reasonable rental therefor, or as requiring any public utility to furnish any part of such appliances which are situated in and upon the premises of any consumer or user, except telephone station equipment upon the subscriber's premises, and unless otherwise ordered by the commission meters and appliances for measurements of any product or service."

It is provided in Section 8 of the act that:

"Every public utility, and every person, association or corporation having conduits, subways, street railway tracks, poles or other equipment on, over or under any street or highway shall for a reasonable compensation permit the use of the same by any public utility whenever public convenience or necessity require such use and such use will not result in irreparable injury to the owner or other users of such equipment nor in any substantial detriment to the service to be rendered by such owners or other users. * * "

The question of the connection of plaintiff's intercommunicating system with the Pacific company's system was passed on by the Public Service Commission December 5, 1913. The commission said:

"From the foregoing the commission finds that the defendant is under no obligation to connect its telephone system with that of any private utility and that the plaintiff, the First National Bank of Albany, does not come within the purview of Section 8, Chapter 279, of the General Laws of Oregon for the year 1911": *First Nat. Bank of Albany* v. *Pacific Telephone & Telegraph Co.,* 25 C. L., p. 880.

It will be seen, therefore, that while the question of the connection of the system of defendants with the private telephone system of plaintiff has been considered by the Public Service Commission, the question of the installation of a system in the plaintiff's bank to be used jointly in connection with the Pacific company's and the Home Telephone Company's systems, and to be under the joint control of those companies or the control of some *quasi*-public corporation and to be regulated by the Public Service Commission, does not appear to have been submitted to it.

An injunction is an extraordinary remedy, and in order for the plaintiff to avail itself of this remedy, the circumstances of the case should be such that the harmonious working of the law involved would result. Until the Public Service Commission has fully considered all the questions involved in this case, a court of equity should not, under all the circumstances, interfere and grant injunctive relief.

It was plainly stated by counsel for plaintiff upon the argument that any fair arrangement whereby plaintiff can have the service of both the Pacific Telephone system and the Home Telephone system without two sets of telephone instruments is much desired, and would be satisfactory to plaintiff. Plaintiff asserts that it is willing for the Pacific company to install the intercommunicating system in its bank building, or take, use and control plaintiff's system if that

company will permit the Home Telephone system to be also connected therewith. Such an adjustment would be making a connection of the two systems, and a kind of joint traffic arrangement between the two telephone companies and necessitate the consideration of the interest of plaintiff and the two telephone companies and of the public, and is a proper question for the consideration of the Public Service Commission. Public utilities wherein complex matters, agreements or arrangements are involved should not be attempted to be regulated by injunction. The rule sanctioned in Pond, Public Utilities, Section 554, reads thus:

"The courts are agreed that in the absence of a contract between competing or connecting companies for the physical connection of their telephone plants or of a constitutional or statutory requirement that such plants be connected for the purpose of exchanging service, such companies cannot be required to make a physical connection of their plants by the use of a common switchboard or trunk line between their exchanges, although the few decisions on this point suggest that the power resides in the state to make and enforce such a requirement in the form of a regulation of the service."

See, also, Wyman, Pub. Service Corp., § 551.

The Public Utilities Act is designed to promote efficiency in service by public utilities, and in order to obtain such result there must be uniformity in the control and regulation of such utilities. To accomplish this the statute, which is the expression of the will of the people in the exercise of their sovereign power, confers exclusive jurisdiction to supervise and regulate upon the Public Service Commission in the first instance.

The Home Telephone Company is materially interested in any arrangement that may be made for a con-

nection of its system with that of another telephone company, and can be cited to appear before the Public Service Commission in an appropriate proceeding. It is not a party to this suit.

The jurisdiction of the Public Service Commission both under the old law and the Public Utilities Act has been upheld by state and federal courts in the cases above mentioned: *Portland Ry., L. & P. Co.* v. *Railroad Commission,* 56 Or. 468 (105 Pac. 709, 109 Pac. 273); Id., 229 U. S. 397 (57 L. Ed. 1248, 33 Sup. Ct. Rep. 820). That tribunal has exercised the authority conferred by this law in the matter of *Pacific Tel. & Tel. Co.* v. *Wright-Dickinson Hotel Co.* (D. C.), 214 Fed. 666, wherein physical connection between the Pacific and Home companies' systems in the Oregon Hotel was found to be feasible, and ordered to be made and adjusted matter of compensation for the joint service required.

At the present stage of the controversy we do not deem that the interposition of a court of equity to grant injunctive relief would be warranted. It follows that the decree of the lower court should be affirmed, and it is so ordered.          Affirmed.

Mr. Chief Justice Moore, Mr. Justice McBride and Mr. Justice Benson concur.