## WOOD v. CHESBOROUGH.

ERROR TO THE SUPREME COURT OF THE STATE OF
MISSISSIPPI.

No. 257. Argued April 24, 25, 1913.—Decided May 26, 1913.

If the judgment of the state court rests on Federal and non-Federal
grounds, and the latter be sufficient to support it, there can be no
review by this court. *Preston* v. *Chicago*, 226 U. S. 447.

The application of laches and the statute of limitation does not present
a Federal question.

This court can only review findings of fact by the state court to the
extent necessary to determine whether, there being no evidence to
support them, a Federal right has been denied by them, or where
conclusions of law as to a Federal right and questions of fact are so
intermingled as to make such review necessary for the purpose of
passing on the Federal question. *Chapman* v. *Goodnow*, 123 U. S.
540.

The highest court of the State having held, following its former deci-
sions on the same subject, that the plaintiff's cause of action was
barred by laches and *res judicata*, the judgment rests on non-Federal
grounds sufficient to sustain it.

This court will not review the judgment of the highest state court in
accepting its former decisions as determining the law of the State
and give a different interpretation of that law. To do so would give
this court power to review all judgments of state courts where
Federal questions are set up and to substitute its judgment for that
of the state courts as to state laws.

Writ of error to review 95 Mississippi, 63, dismissed.

THE facts, which involve the jurisdiction of this court
to review a judgment of the state court when the same
rests on non-Federal as well as Federal grounds, are
stated in the opinion.

Mr. *Duane E. Fox* and Mr. *Frank Boughton Fox*, with
whom Mr. *Robert E. Bunker* was on the brief, for plaintiffs
in error.

*Mr. T. M. Miller* for defendants in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

This suit concerns the title to certain lands in the State of Mississippi. There was an original and an amended bill. The original bill was one to quiet title simply. An answer was filed to it which, among other defenses, set up the decree, hereafter referred to, and adverse possession under the decree. Other defendants were brought in and an amended bill filed. The bills allege the following: Plaintiffs derive title through patent to the State under the Swamp Land Act of Sept. 28, 1850, 9 Stat. 519, c. 84, and patent from the State to the Pearl River Improvement and Navigation Company in 1871, certain conveyances on account of a sale for taxes, and an act of the legislature of the State approved April 19, 1873, by which, it is alleged, all the acts, deeds and proceedings of the Pearl River Improvement and Navigation Company were ratified, approved and confirmed.

On the fourteenth of October, 1891, the defendant, the Southern Pine Company, brought a suit making three of the plaintiffs in this suit defendants, in which it was alleged, among other things, that the company was the owner of the lands described and that the plaintiffs herein asserted title thereto and prayed that it be cancelled, as it cast a cloud upon the title of the company. The plaintiffs (defendants in that suit) made their answer a cross-bill and prayed that the title of the Southern Pine Company be cancelled as a cloud on their title.

Plaintiffs employed one E. E. Baldwin, who was then and for many years thereafter engaged in the practice of the law at Jackson, Mississippi, to conduct the suit for them. By virtue of his employment he appeared at the November term of court in 1891 and at each subsequent

term until the July term, 1895. During that time nothing was done in the case. Baldwin was paid to conduct the suit from its inception to its termination, but, unknown to plaintiffs, early in October, 1895, he was afflicted with a severe stroke of paralysis and another in May, 1896, and from that time plaintiffs were informed and believed that he became mentally and physically incapacitated from looking after his engagements.

At the July term, 1896, while plaintiffs were absent from the State, they being non-residents, and while Baldwin, their counsel, was incapacitated and not cognizant of what was going on, the Southern Pine Company set down the case for final hearing, and at its request a decree was rendered cancelling plaintiffs' title to the lands as a cloud upon that of the Southern Pine Company. The record was made part of the bill. Neither of the plaintiffs had any knowledge or information of the rendition of the decree nor of the incapacity of their counsel until the latter part of the year 1900 or the first of the year 1901, when they began to take steps to assert their rights in the premises.

Plaintiffs allege that under the circumstances the decree should be set aside and held to be absolutely void. And it is alleged that while the suit was pending the Southern Pine Company conveyed the lands to the defendant, A. M. Chesborough, who conveyed undivided interests therein to other defendants, and that they claim title to the lands by virtue of the conveyances and the decree in favor of the Southern Pine Company.

There were demurrers to the bills, which were overruled, and defendants answered. The answer denied the validity of the acts of 1871 and 1873, under which plaintiffs claimed, and the validity of the title asserted through them; admitted that the Southern Pine Company brought suit as alleged by plaintiffs and that a decree was rendered therein and averred that the latter was *res judicata;*

alleged the belief that Baldwin, plaintiff's counsel, abandoned the defense of that suit for the reason that the Supreme Court of Mississippi had decided in the case of *Hardy* v. *Hartman*, 65 Mississippi, 504, and the United States Circuit Court for the Eastern District of Mississippi, in *Bradford* v. *Hall*, that the patents issued to the Pearl River Improvement and Navigation Company were null and void and no defense could have been interposed to the suit. To the amended bill as a bill of review defendants pleaded the statute of limitation of two years and laches.

Testimony was submitted and there was an agreed statement of facts. A decree was entered dismissing the original and amended bills. It was affirmed by the Supreme Court of the State. 95 Mississippi, 63.

The Supreme Court rested its decision entirely upon the decree rendered in the suit of the Southern Pine Company, and, stating the facts, said that the Southern Pine Company claimed by virtue of patents issued by the State subsequent to 1871, and plaintiffs (defendants in that suit) claimed under the Pearl River Improvement and Navigation Company act of 1871, dealt with in the case of *Hardy* v. *Hartman*, 65 Mississippi, 504. The case, the court further said, was continued from term to term and was finally submitted upon the pleadings, certain exhibits and documentary evidence, and a decree rendered for the company confirming its title and cancelling that of the defendants. The decree was not appealed from within the two years allowed by law for taking appeals. In 1902, six years after the rendition of the decree, plaintiffs filed their original bill. Upon hearing and being met by a plea of *res judicata*, they filed an amended bill seeking to have the decree set aside because their attorney was too ill to give the case proper attention. This illness the court, however, said came to the knowledge of plaintiffs three and one-half years before it was sought to set aside the decree. "In this state of facts," the court continued,

"there is no escape from the authority of *Brooks* v. *Spann*, 63 Mississippi, 198, and an attentive examination of that case will show that it can make no difference whether the amended bill is or is not technically a bill of review. Furthermore, we do not think there is such diligence shown by appellants in this case as would entitle them to vacate the former decree even though no statute of limitations barred the way. We cannot s e our way clear to go further than this and decide the other important and interesting questions presented since the action of the court in upholding the plea of *res judicata* disposes of the case."

It will be observed that the trial court based its decision upon the effect of the decree in favor of the Southern Pine Company as an adjudication of the issues and that the Supreme Court rested its decision mainly upon the statute of limitations and laches.

A motion is made to dismiss on the ground that the case was decided upon non-Federal questions sufficient to sustain the judgment. The motion is resisted by plaintiffs. They contend that the ground urged for its support does not apply because they "consistently pleaded and continually urged constitutional immunities" and that the jurisdiction of this court "cannot be ousted by mere action of the state court in ignoring and refusing to consider such constitutional questions," by assuming that its decision on a point of local law is decisive of constitutional questions; "particularly when the decision of the points of general and local law necessarily include a consideration of the constitutional immunities." An elaborate argument is submitted to establish these contentions. The foundation of it is that Federal questions were essentially involved and their decision was evaded by the Supreme Court. These questions arose, it is contended, by the impairment of the contract constituted by the acts of 1871 and 1873, under which plaintiffs claim title, by the repeal of those acts by the legislature of the State and the

cancellation of the titles founded upon them in the hands of *bona fide* transferees and by executive action pursuant to the repealing acts granting the lands to others. Such action, it is contended, "impaired the obligation of contracts by legislative enactment and deprived the plaintiffs of property without due process of law."

The contention undoubtedly presents a Federal question, and, on account of it, it is said that we may review the local questions on which, we have seen, the Supreme Court of the State based its decision. It is, however, argued that "if the pleadings or proceedings in the state court present or disclose the assertion of a Federal right or constitutional immunity, this court has jurisdiction to review the decision of the state court, even though that decision is based entirely upon the questions of local law, and the decision of this court may decide those questions only." This is, in effect, saying that in all cases if there be local and Federal questions we may pass upon both and reverse the state court upon both. And yet it is well established that if there be Federal and non-Federal grounds, and the latter be sufficient to support the judgment of the state court, there can be no review by this court. And certainly the application of laches and the statute of limitations does not present a Federal question. *Gaar, Scott & Co.* v. *Shannon,* 223 U. S. 468; *Preston* v. *Chicago,* 226 U. S. 447, 450.

Plaintiffs, however, advance their contention with confidence and attempt to support it by a citation of cases. We need not review them all. They do not impugn the doctrine that there may be a non-Federal question decided broad enough to support the state court's decision which we are without power to review, though there may also be Federal questions in the case. They only hold that the sufficiency of the Federal right set up cannot be evaded if necessary to the determination of the case, and, it may be admitted, that of such necessity this court must in

each instance, decide. *Huntington* v. *Attrill*, 146 U. S. 657, is an example, and also *Cresswill* v. *Knights of Pythias*, 225 U. S. 246, and *Kansas City Southern Railroad Co*. v. *Albers Commission Co.*, 223 U. S. 573. *Chapman* v. *Goodnow*, 123 U. S. 540, is an illustration of the doctrine and its explanation. In *Cresswill* v. *Knights of Pythias* it is decided that this court will review the finding of facts by a state court (a) where the Federal right was denied as a result of them and there is no evidence to support them, a question of law hence resulting for decision; and (b) where a conclusion of law as to a Federal right and finding of fact are so intermingled as to cause it to be necessary, for the purpose of passing on the Federal question, to analyze and dissect the facts. To the extent necessary to do so the power exists as a necessary incident to a decision upon the claim of denial of the Federal right.

Neither condition exists in the case at bar. It comes, instead, under the principle of *Chapman* v. *Goodnow*. There the Federal question alleged to have been involved in a former decree, and to which due faith and credit under the Constitution of the United States, it was insisted, should have been accorded, was held to be superseded by a new promise. So in the case at bar. The rights of plaintiffs based on the act of 1871, under which the patent to the Pearl River Improvement and Navigation Company was issued, and the confirmatory act of 1873 were determined in the suit of the Southern Pine Company against certain of the plaintiffs and through whom title is deraigned. That decree stood as an obstruction to the assertion of plaintiffs' title. They attacked it in their amended bill and sought to have it reviewed and set aside. The trial court denied the prayer of the bill and held the decree *res judicata*. The Supreme Court decided that the statute of limitations of the State precluded the relief sought, and for the decision cited *Brooks* v. *Spann*, 63 Mississippi, 198. The court further decided that "even though no statute

of limitations barred the way" there was no "such dili-gence shown by plaintiffs to entitle them to vacate the former decree."

In *Brooks* v. *Spann*, to avert the effects of a plea of *res judicata* against the cause of action set up, an amendment was made which asserted not only the original grounds of recovery but also averred that the suit, the decree of which was so pleaded, was instituted and prosecuted without the consent, knowledge or procurement of the party against whom it was rendered. A demurrer to the bill set up, among other grounds, the statute of limitations of the State. Commenting on the decree, the court said that it presented, if valid, an insurmountable obstacle to the suit; it had to be attacked and nullified, or all controversy over its subject matter was by it forever foreclosed. Holding that the suit was barred by the statute of limitations, the court said: "There is no statute of limitations applicable by its terms to the right to annul the decree, but in the absence of such statute the court will adopt that one which is applicable to analogous rights. By sections 2680 and 2681 of the Code of 1880 the time in which bills of review and appeals may be prosecuted is limited to two years, and by section 2075 a like limitation is imposed upon the rights to surcharge and falsify the accounts of executors, administrators and guardians. It thus appears that for errors of law or fact, in the classes of cases named in these statutes, a uniform limitation of two years has been declared, and within such time, we think, persons having notice of decrees affecting their rights, which for fraud or other sufficient reasons should be vacated by the courts, ought to take action, failing in which, relief should be denied. *Plymouth* v. *Russell Mills*, 7 Allen, 438; *Evans* v. *Bacon*, 99 Massachusetts, 213; *Gordon, Admr.,* v. *Ross,* 63 Alabama, 363."

The Supreme Court, in the case at bar, accepted this decision as determining the law of the State, and we cannot

review its judgment and give a different interpretation of that law. That case and this have many features of resemblance. The suit and decree pleaded in that case was a suit and decree in the state court. The suit at bar was commenced in the state court, and the decree pleaded and which is sought to be set aside was rendered in the same court. It was subject, therefore, to the local procedure and local laws. If we should assert a power of review in such case we could exercise like power in all cases where Federal questions are set up and substitute our judgment for the judgment of the state courts as to the state laws.

We may say, in conclusion, that there are many cases illustrating the power of the States over the pleadings and practice in their courts and the right to prescribe within what time and upon what conditions suits can be commenced and maintained. *Texas & New Orleans R. R. Co.* v. *Miller,* 221 U. S. 408; *Brinkmeier* v. *Missouri Pacific Railway Co.,* 224 U. S. 268.

The motion to dismiss must be, and it is, granted.

*Dismissed.*