# PORTLAND RAILWAY, LIGHT AND POWER COMPANY *v.* RAILROAD COMMISSION OF OREGON.

### ERROR TO THE SUPREME COURT OF THE STATE OF OREGON.

#### No. 119.   Argued May 1, 2, 1913.—Decided June 10, 1913.

A construction by the state court that the equality provisions of a state statute regulating railway fares applies to localities as well as to individuals is binding upon this court, and the constitutionality of the statute will be determined as so construed.

The authority of the States to control by appropriate legislation rates of fare to be charged by street railways and other common carriers wholly within their borders and subject to their laws is unquestioned.

A State may, without violating the Fourteenth Amendment, prohibit any unjust discrimination by a domestic railroad company against any localities upon its lines; and it may leave it to the Railroad Commission to determine whether the rates are or are not discriminatory, provision being made for notice and judicial review.

It is only in exceptional cases that this court does not accept the facts as found by the state Supreme Court; and where, as in this case, those facts are supported by competent testimony it will not retry issues of fact already properly heard and determined by courts of competent jurisdiction.

Where the record does not clearly disclose all facts necessary on which to base conclusions, this court will not overrule the state tribunal and declare rates fixed by it within its jurisdiction to be confiscatory and violative of rights secured by the Fourteenth Amendment.

A rate may be *per se* reasonable and lawful and yet illegal as discriminatory against a shipper or a locality.

56 Oregon, 468, affirmed.

THIS case originated in a complaint made by the municipal corporation of Milwaukie, in the State of Oregon, before the Railroad Commission of that State, seeking an order restraining the Portland Railway, Light & Power Company, the plaintiff in error, operating a system of street railways in the City of Portland, Oregon, and certain suburban roads in connection therewith, from practicing certain alleged discriminations in rates of fare, and fixing reasonable fares between the City of Portland and the town of Milwaukie. Upon hearing, the Railroad Commission found that the fares charged by the Railway Company were unjustly discriminatory against the inhabitants of Milwaukie and ordered a reduction between Milwaukie and Portland from ten cents to five cents, and ordered the Railway Company to furnish to the passengers traveling between such points the same transfer privileges as were given to passengers on the Mt. Scott Line of the plaintiff in error. The Circuit Court refused to enjoin the enforcement of the order of the commission, and this judgment was affirmed by the Supreme Court of Oregon. 56 Oregon, 468. The case was then brought to this court upon writ of error.

An idea of the physical situation of this railroad may be had by an inspection of the attached plat which may be used for illustration, and which is reproduced from one appended to appellant's brief (the city limits of Portland being represented by the dotted line).

The Circuit Court made the following findings of fact:

"1. That the plaintiff, Portland Railway Light & Power Company is a corporation duly organized and existing under and by virtue of the laws of the State of

Oregon, and owns and operates by electric power a suburban and interurban railroad as a common carrier in this state, between First and Alder Streets in the City of Portland, and Canemah, Clackamas County, Oregon, known as the 'Oregon City Division,' and also a line of railroad from said First and Alder Streets to Lents and Lents Junction, Multnomah County, Oregon, known as the 'Mount Scott Division,' and also a line of railroad from a point known as Golf Junction on the first mentioned line of railroad easterly and southerly through Multnomah County to Nickum, Gates and Cazadero, in Clackamas County, Oregon, said Nickum, Gates and Lents being points outside of the City of Portland, Oregon.

"2. That the defendant is the duly appointed, organized and acting Railroad Commission of Oregon, under the provisions of Chapter 53 of the Laws of Oregon for the year 1907.

"3. That the town of Milwaukie is a municipal corporation duly organized under and existing by virtue of the laws of the State of Oregon.

"4. That the Portland Railway Company is a corporation organized and existing under and by virtue of the laws of the State of Oregon. That its street cars are operated by electric power within the City of Portland and to the City of St. Johns, Multnomah County, Oregon, and that it is a common carrier. That a majority of the capital stock of the said Portland Railway Company is owned by the plaintiff herein; and that the said Portland Railway Company and the plaintiff herein are operated under a common management.

"5. That plaintiff has established rates of fare for the transportation of persons traveling as passengers *traveling* upon its said line of railway and between different points upon its said railways and its said terminus at First and Alder Streets in said City of Portland, and between Golf Junction and the places and points named below, the

following rates, fares and charges being those so established and the distances being as given below:

Between Portland and

### On Oregon City Division.

| | | | |
|---|---|---|---|
| Golf Junction (within City of Portland) | 5.36 miles | 5 | cents. |
| Lambert | 5.93 " | 10 | " |
| Knight | 6.29 " | 10 | " |
| Hendee | 6.44 " | 10 | " |
| Milwaukie | 6.71 " | 10 | " |
| Island | 7.05 " | 10 | " |
| Milwaukie Heights | 7.70 " | 15 | " |
| Courtney | 8.30 " | 15 | " |
| Oak Grove | 8.48 " | 15 | " |
| Center | 8.68 " | 15 | " |
| Risley | 9.26 " | 15 | " |
| Oregon City | 14.47 " | 25 | " |
| Canemah | 15.47 " | 25 | " |

### On Mt. Scott Division.

| | | | |
|---|---|---|---|
| Reservoir (within City of Portland) | 4.69 " | 5 | " |
| Lents | 7.69 " | 5 | " |
| Lents Junction | 8.31 " | 10 | " |

### On Springwater Division.

| | | | |
|---|---|---|---|
| Golf Junction (within City of Portland) | 5.35 " | 5 | " |
| Nickum | 6.51 " | 5 | " |
| Kerrigan | 7.26 " | 10 | " |
| Bell | 8.51 " | 10 | " |
| Kendall | 9.32 " | 10 | " |
| Lents Junction | 10.71 " | 10 | " |
| Gilbert | 11.65 " | 10 | " |
| Gates | 12.38 " | 10 | " |
| Wilson | 13.00 " | 15 | " |
| Sycamore | 13.48 " | 15 | " |
| Jenne | 14.42 " | 15 | " |

Between Golf Junction and
        On Oregon City Division.

| | | | |
|---|---|---|---|
| Lambert | .57 | miles | 5 cents. |
| Knight | .93 | " | 5 " |
| Hendee | 1.08 | " | 5 " |
| Milwaukie | 1.35 | " | 5 " |
| Island | 1.69 | " | 5 " |
| Milwaukie Heights | 2.34 | " | 10 " |
| Courtney | 2.94 | " | 10 " |
| Oak Grove | 3.12 | " | 10 " |
| Center | 3.32 | " | 10 " |
| Risley | 3.90 | " | 10 " |
| Oregon City | 9.21 | " | 20 " |
| Canemah | 10.21 | " | 20 " |

On Springwater Division.

| | | | |
|---|---|---|---|
| Nickum | 1.15 | " | 5 " |
| Kerrigan | 1.90 | " | 5 " |
| Bell | 3.15 | " | 5 " |
| Kendall | 3.96 | " | 5 " |
| Lents Junction | 5.35 | " | 5 " |
| Gilbert | 6.29 | " | 10 " |
| Gates | 7.02 | " | 10 " |
| Wilson | 7.64 | " | 10 " |
| Sycamore | 8.12 | " | 10 " |
| Jenne | 9.07 | " | 10 " |

"6. That the distance between Lents and the limits of
the City of Portland on said plaintiff's line of railroad is
3.50 miles. That the station of Hazelwild on plaintiff's
said Mt. Scott line, is a mile and one half from Lents, and
two miles outside the limits of the City of Portland.
That the distance on the line of the said Portland Rail-
way Company from the terminus of said Company near
First and Alder Streets in the said City of Portland, to
the terminus in the City of St. Johns, Oregon, is to-wit:
nine miles. The distance from the said terminus in the
City of Portland, Oregon, to the city limits of the said

city of St. Johns is about seven miles, and from there to the terminus in the said City of St. Johns proper is about two miles.

"7. That the aforesaid places are suburbs of the City of Portland.

"8. That plaintiff's predecessor acquired about four miles of track and right of way which extended from Mt. Tabor Junction and Lents, on the 13th day of April, 1901, by and pursuant to an agreement wherein and whereby it was agreed in consideration thereof that not more than a five cent fare should be charged by plaintiff's said predecessor, its successors and assigns, for any ride between Lents and Portland, the plaintiff is carrying out said agreement. The said track and right of way are facilities, among other facilities, used by the plaintiff in the transportation of passengers between Lents and Portland.

"9. That before and at the time said Lents contract was entered into, the population of the territory contiguous to said railroad was small. That now the population of said territory is about 10,000; and the value of real estate in Lents and said territory has increased rapidly. That the said increase in population and land values has been and is due in a great measure to the fact that the plaintiff has charged and is charging but five cents for transportation of passengers between First and Alder Streets in the City of Portland, and Lents, and intermediate points.

"10. That at the time said Lents contract was entered into the town of Milwaukie had a population of about 500 people; that at all times since said Lents contract was entered into the plaintiff and its predecessor companies has charged ten cents for the transportation of passengers between First and Alder Streets in the City of Portland and the town of Milwaukie. That since the five cents fare between Lents and Portland has been in

operation it has caused the said Lents and Lents territory to increase in population as aforesaid, and said land values in said Lents and Lents territory to increase in value as aforesaid, and has stagnated the growth and population of the town of Milwaukie territory and its business has not appreciably increased.

"11. That by reason of the fact that the inhabitants of the town of Milwaukie are charged double the fare charged the inhabitants of Lents for transportation between their respective residences and the City of Portland, the inhabitants of the town of Milwaukie have paid to the plaintiff large sums of money in the aggregate for transportation from the town of Milwaukie in excess of the charges made inhabitants of Lents for transportation from Lents to First and Alder Streets in the City of Portland, to the great injury to the said inhabitants of Milwaukie; and that a just and reasonable rate, not discriminatory to be charged to persons between First and Alder Streets in the City of Portland and the town of Milwaukie, Oregon, is five cents.

"12. That the bulk of the inhabitants of the town and territory of Milwaukie are employed in the City of Portland, and go to and from their homes on the lines of plaintiff's said railroad to work mornings and evenings daily.

"13. That the population and territory between and including Lents and Hazelwild a distance of one and one-half miles, on plaintiff's Mt. Scott line, are substantially the same territory and population between Golf Junction on the City Limits of Portland and Milwaukie, a distance of 1.31 miles, on plaintiff's Oregon City Division. That the conditions and circumstances under which plaintiff transports passengers between First and Alder Streets in said City of Portland, and the stations on the Mount Scott line from Hazelwild to Lents inclusive, are substantially the same as the circumstances and conditions under which plaintiff transports passengers

from said First and Alder Streets to stations on the Oregon City line from said Golf Junction to Milwaukie inclusive, except as to the rate of fare charged and the giving of transfer privileges as hereinafter set forth, which fares and transfer privileges are in favor of the inhabitants of the territory from Hazelwild to Lents inclusive.

"14. That Nickum is a station on the plaintiff's Springwater Division, 1.15 miles easterly from Golf Junction, and about 3,000 feet outside the city limits of the city of Portland, Oregon. That the plaintiff operates but seven trains per day through Nickum, between Cazadero and Portland, in either direction. That otherwise, except as to the rates of fare charged and the giving of transfers, and conditions and circumstances as to the transportation of passengers between Nickum and the plaintiff's terminus at First and Alder Streets aforesaid, are substantially the same as between said terminus and Milwaukie, and except also that the travel between Milwaukie and Portland is greater than between Nickum and Portland.

"15. That from points on the Mt. Scott Division without the City of Portland, and Nickum on the Springwater Division, and other points on said division, the plaintiff furnishes to passengers who pay fare to First and Alder Streets in the City of Portland, transfers, entitling the holder thereof to transportation over the lines of the street railway of said Portland Railway Company in the City of Portland, and the City of St. Johns, and that such transfers are not furnished to the citizens of Milwaukie traveling and paying fare from Milwaukie to said First and Alder Streets.

"16. That the evidence does not show that, considered by themselves, or in comparison with other lines of travel, the charges of the plaintiff upon the Oregon City Division are unreasonable, but that compared with the charges made by the plaintiff upon the Springwater and Mt. Scott

Divisions, the charges of the plaintiff for the transportation of passengers between said First and Alder Streets and the town of Milwaukie are unjust and unreasonable, discriminatory and give undue preference.

"17. That the evidence is not sufficient to show the value of the property of the plaintiff used in the operation of its road or the value of any of the divisions thereof, heretofore mentioned; and that the evidence does not show the income, or expenditures, or profits or loss if any, from the operation of the respective divisions of the plaintiff's line above mentioned, or the cost of transporting passengers upon any of such divisions.

"18. That the plaintiff operates its cars and transports passengers between First and Alder Streets and Milwaukie either wholly over the Oregon City division, from the junction at the east end of the Madison Street bridge, or from said junction over what it terms its Sellwood division to Golf Junction, and then over the Oregon City division to Milwaukie. The plaintiff credits all of the Milwaukie business transported by way of the Sellwood division to that division, and no credit or account is taken of it as in part earned by the Oregon City division. That the evidence does not disclose the length of haul of any of the passengers transported by the plaintiff. That the court is therefore unable to find as to the traffic density to and from Milwaukie, or on the Oregon City division or any of the plaintiff's other divisions.

"19. That on to-wit: January 30th, 1908, the defendant, after due notice and full hearing, made and entered, and caused to be served upon the plaintiff, the certain order and finding set out as 'Exhibit A' attached to the plaintiff's complaint. That upon the resubmission of the said matter to the said defendant, as aforesaid, the said defendant made a certain amendment to the said order, and returned the same into this court, and that

the same is now on file herein.   That the defendant has caused to be filed in this court a certified transcript of all its proceedings leading up to and including its said order and amendment.   That the said order, amendment and transcript are hereby made a part of these findings."

It should be noticed that by the laws of Oregon, Portland being a city exceeding fifty thousand in population, a greater fare than five cents cannot be demanded for a continuous trip in one general direction between any two points in the city.   B. & C. Comp., § 2096.

*Mr. Franklin T. Griffith* and *Mr. Joseph S. Clark,* with whom *Mr. Frederick V. Holman* was on the brief, for plaintiff in error.

*Mr. A. M. Crawford,* Attorney General of the State of Oregon, and *Mr. Clyde B. Aitchison,* with whom *Mr. R. R. Giltner* and *Mr. R. M. Sewell* were on the brief, for defendant in error.

Mr. Justice Day, after making the foregoing statement, delivered the opinion of the court.

The contentions of violation of Federal right alleged to have been set up and denied in the state court and therefore to be reviewable here arise under the Fourteenth Amendment to the Constitution, securing due process of law and equal protection of the laws as against state action.

The statute under which the Railroad Commission acted in this case provides:

"The term 'railroad' as used herein shall mean and embrace all corporations . . . that now, or may hereafter, own, operate by . . . . electric . . . power, manage or control, any . . . interurban railroad . . . as a common carrier in this State."   Laws of Oregon, 1907, chap. 53, § 11, p. 70.

"Upon complaint of any . . . municipal organization, that any of the . . . fares, . . . are in any respect unreasonable or unjustly discriminatory, . . . the commission may notify the railroad complained of that complaint has been made, and ten days after such notice has been given the commission may proceed to investigate the same. . . . If upon such investigation the . . . fares, . . . complained of shall be found to be unreasonable or unjustly discriminatory, . . . the commission shall have power to fix and order substituted therefor such . . . fares, . . . as it shall have determined to be just and reasonable and which shall be charged, imposed and followed in the future." Id., § 28, p. 82.

"Whenever, upon an investigation made under the provisions of this Act, the commission shall find any existing . . . fares, . . . are unreasonable or unjustly discriminatory, . . . it shall determine and by order fix a reasonable . . . fare . . . to be imposed, observed, and followed in the future in lieu of that found to be unreasonable or unjustly discriminatory." Id., § 30, p. 86.

"It shall be unlawful for any railroad to demand, charge, collect, or receive from any person, firm or corporation a less compensation for . . . any service rendered or to be rendered by said railroad, in consideration of said person, firm or corporation furnishing any part of the facilities incident thereto." Id., § 48, p. 93.

"If any railroad shall make or give any undue or unreasonable preference or advantage to any particular person, firm, or corporation, or shall subject any particular person, firm, or corporation . . . to any undue or unreasonable prejudice or disadvantage in any respect whatsoever, such railroad shall be deemed guilty of unjust discrimination." Id., § 49, p. 94.

"The provisions of this Act shall be liberally construed

with a view to the public welfare, efficient transportation facilities, and substantial justice between . . . passengers and railroads." Id., § 59, p. 98.

"The duties and liabilities of the railroads defined in Section 11 of this Act, shall be the same as are prescribed by the common law, and the remedies against them the same, except where otherwise provided by the constitution or statutes of this State, and the provisions of this Act are cumulative thereto." Id., § 61, p. 98.

Section 32 of the Act provides that the railroad or the other party interested in any order of the Commission fixing fares may commence a suit in the Circuit Court of Marion County against the Commission to vacate any such order on the ground that the fares fixed are unlawful. Provision is made for the service of summons, the filing of an answer by the Commission and precedence of such a case, and that it shall be tried and determined as a suit in equity.

By § 34, if different or additional evidence is introduced by the plaintiff upon the trial, the court, before rendering judgment, is required, unless the parties stipulate otherwise, to transmit a copy of the evidence to the Commission, which may alter, modify, amend or rescind its order and report its action to the court. If the order is rescinded, the suit shall be dismissed; if it is changed, judgment shall be rendered on the modified order, and if it is not changed, judgment shall be rendered upon the original order.

Section 35 authorizes an appeal by either party to the Supreme Court, where also such a case shall have precedence.

The Supreme Court of Oregon held that the statute applied to localities as well as individuals and that fares that were unreasonable or unjustly discriminatory as against a given locality came within its terms. This construction of the statute is binding upon this court, and it

is to be considered. as thus construed by the Supreme Court of Oregon.

The authority of the States to control by appropriate legislation the rates of fare to be charged by street railway companies and other common carriers wholly within their borders and subject to their laws is unquestionable. In the legitimate exercise of such authority we see no reason why a State may not consistently with due process of law prohibit any unjust discrimination by a domestic railroad company against certain localities upon its lines.

If the State may not thus legislate as to its domestic corporations they, by merely arbitrary action, may so exercise their rate-fixing power as to build up one community and destroy another, and prevent that equality of treatment which it has been the object of many statutes of this kind, passed under state and Federal authority, to secure. The statute does not define unjust discrimination, but leaves it to the Commission, upon hearing, to determine what rates are unjust and discriminatory, and to make orders for other fares, which in its judgment are not open to such objection. The statute expressly provides for a judicial review by the courts of the orders of the Commission to test the lawfulness of the fares fixed and the reasonableness of regulations prescribed by the Commission. We find nothing in the Fourteenth Amendment which prevents a State from making provision for such relief to communities unjustly discriminated against by companies subject to the laws of the State in which they operate and from which they derive their powers as common carriers and public service corporations.

Nor do we understand the Supreme Court of Oregon to have construed the statute as permitting no consideration, in determining the question of discrimination, of the circumstances and conditions which may justify differences in rates, other than the number of miles which passengers are carried, as contended by the plaintiff in error. For,

upon rehearing, this contention was noticed and the Supreme Court remarked that in the opinion in the case, notwithstanding it was said that the fares were not unreasonable when compared with the charges made by other railway companies for similar services, the court had held that the law extended to charges which were "unreasonable or unjustly discriminatory;" and it was said (56 Oregon, 487):

"'The fact that a rate is *per se* reasonable does not disprove the charge that it is unlawful,' say Messrs. Beale and Wyman in their work on Railroad Regulation, at § 839. 'If rates are relatively unjust, so that undue preference is afforded to one locality or undue prejudice results to another, the law is violated and its penalties incurred, although the higher rate is not in itself excessive.' The question presented for consideration is not the reasonableness *per se* of the charge, but its reasonableness considered in relation to charges made by plaintiff at other localities on its system for like and contemporaneous service; for the statute, as we have construed it, forbids undue preference or discrimination between localities. Circumstances, however, may so explain the difference between rates compared as to deprive the lower rate of any bearing on the higher, but the discrimination, without an excuse recognized by the law, would be in and of itself unjust and unreasonable. Beale and Wyman, § 838."

In the light of this consideration of the statute, we will consider the contention that in this particular case, there has been a deprivation of due process of law within the meaning of the Federal Constitution.

Ordinarily, in cases which come before us for review, this court accepts the facts as found by the state Supreme Court. An examination of the record in this case convinces us that the conclusions reached by the court do not bring the case within that exceptional class where this court will reëxamine the facts found, with a view to

ascertaining the correctness of the conclusions reached. *Kansas City Southern Railroad Co.* v. *Albers Commission Co.,* 223 U. S. 573; *Cedar Rapids Gas Co.* v. *Cedar Rapids,* 223 U. S. 655; *Oregon R. R. & N. Co.* v. *Fairchild,* 224 U. S. 510; *Creswill* v. *Knights of Pythias,* 225 U. S. 246; *Wood* v. *Chesborough,* 228 U. S. 672. In this case the facts found by the lower court and adopted in the Supreme Court are supported by competent testimony; and this court does not sit to retry issues of fact thus heard and determined by the properly constituted tribunals of the State having jurisdiction of the subject.

The findings show that the Railway Company carried passengers upon the Mt. Scott line between Portland and Lents for five cents each and gave them a free transfer for carriage upon the lines of the Portland Railway Company in the City of Portland and the adjacent City of St. Johns, but charged a ten-cent fare to Milwaukie and gave no transfers. The effect of such discrimination is found to have been the building up and development of Lents and the country along the line to Lents and the retarding of the settlement and growth of the localities and communities situated upon the less favored division. Findings are made showing the conditions and circumstances under which transportation is made upon the divisions of the road, and the similarity of circumstances and conditions except as to the charging of the different rates and the giving of transfer privileges to the one and the withholding of such privileges from the other. In view of these findings, based upon evidence, we cannot say that the determination of the Commission, confirmed by the courts, that the rates of fare were discriminatory, was in deprivation of due process of law.

The contract set up by which the fares from Lents were required to be not greater than five cents cannot be held to justify the discrimination, as such contracts must be taken to have been made in view of the continuing power

of the State to control the transportation rates of common carriers subject to its jurisdiction. *Armour Packing Co. v. United States,* 209 U. S. 56; *Louisville & Nashville R. R. v. Mottley,* 219 U. S. 467.

It is also argued that the rates established by the order of the Commission are such as to be of a confiscatory nature and therefore within the prohibitions of the Fourteenth Amendment. Upon this branch of the case the Circuit Court found that there was not evidence sufficient to show the value of the property or its divisions used in the operation of the road, nor sufficient to show the income or expenditures, or profit or loss from the operation of the different divisions, or the cost of transporting passengers upon any such divisions. An examination of the testimony does not satisfy us that the court below was without substantial proof in reaching this conclusion. The Supreme Court of Oregon, in view of its findings upon the discriminatory character of the rates established, did not find it necessary to consider by itself the reasonableness of the charge, and the record before it did not present a case of confiscatory rates so clear that this court should interfere because of the protection afforded by the Federal Constitution.

We find no violation of the Fourteenth Amendment in the judgment of the Supreme Court of Oregon.

*Affirmed.*