ELLIOTT MACH. CO. v. CENTER.

(District Court, W. D. Michigan, S. D.   February 20, 1915.)

1. PATENTS ⊜⇒214—INFRINGEMENT—REVOCATION OF LICENSE.

Complainant furnished to defendant a patented machine for attaching shoe buttons, bearing a plate stating that it was lent or leased and accepted to use wire bearing complainant's trade-mark only. There was no other contract between the parties. Complainant furnished wire in coils each sufficient for 1,000 operations of the machine, and in the price charged included a royalty or license fee for the use of the machine for the 1,000 operations. *Held*, that the contract was in effect a license, revocable at will on completion of the number of operations for which the license fee had been paid, and that on its revocation by complainant the further use of the machine by defendant constituted an infringement of the patents.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 321–327; Dec. Dig. ⊜⇒214.]

2. MONOPOLIES ⊜⇒10—CLAYTON ANTI-TRUST ACT—CONSTRUCTION—APPLICATION TO EXISTING CONTRACTS.

Clayton Anti-Trust Act Oct. 15, 1914, c. 323, § 3, 38 Stat. 731, which makes it unlawful to lease or sell machinery, etc., on any condition or agreement which will tend to prevent the lessee or purchaser from dealing with competitors, is applicable to a continuing contract of lease, although made before its passage.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 9; Dec. Dig. ⊜⇒10.]

3. COMMERCE ⊜⇒3—CONTRACTS RELATING TO INTERSTATE COMMERCE—POWER OF CONGRESS—SUBSEQUENT LEGISLATION.

All persons entering into contracts involving interstate commerce must do so subject to the right of Congress thereafter to control, regulate, or prohibit the performance thereof.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 3; Dec. Dig. ⊜⇒3.]

4. CONSTITUTIONAL LAW ⊜⇒155—CONTRACTS—EFFECT OF SUBSEQUENT LEGISLATION.

A contract to do a thing, lawful when made, may be avoided by subsequent legislation making it unlawful, and an act of Congress may affect contracts or rights which had their inception before its passage.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 291, 431; Dec. Dig. ⊜⇒155.]

5. EQUITY ⊜⇒54—PRINCIPLES—ENFORCING INEQUITABLE DEMANDS.

While courts will not refrain from declaring and applying legal principles, because peculiar hardships will result in isolated instances, they

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

are not to be persuaded consciously to do injustice in violation of those principles.

[Ed. Note.—For other cases, see Equity, Dec. Dig. ⊙⟞54.]

In Equity. Suit by the Elliott Machine Company against Albert M. Center. On motion by defendant to dismiss. Denied.

Wilson & Johnson, of Grand Rapids, Mich., for complainant.
Taggart & Taggart, of Grand Rapids, Mich., for defendant.

SESSIONS, District Judge. [1] According to the allegations of the bill of complaint, plaintiff is the owner of three patents for improvements in button setting machines and attachments thereto. It is, and for several years has been, manufacturing and leasing or licensing shoe button attaching machines constructed under its patents, and, in so doing, is and has been engaged in interstate commerce throughout the United States. Prior to the enactment of the Clayton Anti-Trust Act, so called, in October, 1914, plaintiff's machines were loaned or leased to users, including defendant, on the condition that only its wire should be used in their operation. Attached to each machine so loaned or leased was a metal plate bearing the following inscription:

"This machine is the property of the Elliott Machine Company and is loaned to and accepted by the user to use wire furnished under the company's trade-mark only."

No other agreement than that stated upon the plate was made with defendant or other users. Plaintiff's wire, the use of which was thus required, was put up in coils. Each coil contained a sufficient amount of wire for 1,000 operations of the machine, which was so constructed as to lock automatically upon the completion of each 1,000 operations. For that reason a key with which to unlock the machine was attached to each coil of wire. The wire and key were furnished by plaintiff to its customers for about 85 cents per coil, which included both the price of the wire and the royalty for the use of the patented machine to fasten 1,000 buttons.

Since October, 1914, plaintiff, believing that the further continuance and performance of its former contracts would be a violation of section 3 of the Clayton Act, has notified the users of its machine, including defendant, that they will no longer be required to purchase or use its wire, and that a royalty of 75 cents must be paid for the use of each machine to make 1,000 operations, or to fasten 1,000 shoe buttons. Plaintiff has continued to manufacture wire, but sells the same, without the key, for 10 cents per coil, which is a fair price for the wire alone, without any royalty for the use of the machine.

Defendant has purchased wire from plaintiff's agents at 10 cents per coil, and has continued to use the patented machine, but has refused to pay the royalty demanded. This suit is brought to restrain further alleged infringement of plaintiff's patents and for the usual accounting. Defendant's motion to dismiss is founded primarily upon the claim that section 3 of the Clayton Act is not retroactive and cannot

affect contracts, like the one here involved, made and entered into before its enactment.

One vice of defendant's contention lies in the fact that the contract between these parties does not constitute an irrevocable license to use the patented machine during the full period of the life of the patents, as claimed, but, at most, is a license which may be revoked by plaintiff or repudiated by defendant at any time when 1,000 operations of the machine have been completed for which a royalty has been paid. It is true that the notice or inscription upon the plate attached to the machine is silent as to both time and royalties, but the conduct of the parties in performing the contract shows clearly and conclusively that their mutual intention and agreement was that a royalty was to be included in the price of the wire and that the right to use the machine was to be limited to the operations thereof for which such royalty had been paid. In terms, the contract is a loan and not a license. It follows, regardless of whether or not the specific transactions between these parties involved interstate commerce, that defendant's right to use plaintiff's machine could be terminated at the will of either party and that defendant would be an infringer of plaintiff's patents if he continued to use the machine after his right so to do had been terminated.

[2] However, the principal question argued at the hearing of this motion to dismiss was that of the application and effect of the Clayton Act to and upon the contract between these parties, which was made and entered into prior to the congressional enactment. In the discussion of that question, counsel for both parties have assumed that the contract is single, and also that it is one which, if made at the present time, would fall within the ban of section 3 of the act. Counsel for defendant earnestly insists that, even if Congress so intended, the statute cannot be construed to apply to pre-existing contracts, and to prohibit their performance and enforcement, without violating fundamental and constitutional rights. The statute does not in terms except from its operation any agreements or contracts, past, present, or future, and, in the absence of such exception, it is to be presumed that Congress intended to prohibit, not only the making of future contracts, but also the further performance of past contracts of the kind specified.

[3, 4] Congress derives its power to enact such legislation from the commerce clause of the Constitution, and the power so conferred is broad, comprehensive and all embracing. All persons entering into contracts involving interstate commerce must do so subject to the right of Congress thereafter to control, regulate, or prohibit the performance thereof. "Every owner of property holds the same subject to such action as the sovereign power of the state may, in the exercise of its legitimate sovereignty, adopt in relation to it." It is now too well settled to admit of controversy that a contract to do a thing, lawful when made, may be avoided by subsequent legislation making it unlawful, and that an act of Congress may lawfully affect rights which had their inception before its passage. Louisville & Nashville Railroad Co. v. Mottley, 219 U. S. 467, 31 Sup. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671; Armour Packing Co. v. United States, 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681; Phila., Balt. & Wash. R. R. v. Schu-

bert, 224 U. S. 603, 612, 613, 32 Sup. Ct. 589, 56 L. Ed. 911; Addyston Pipe & Steel Co. v. United States, 175 U. S. 211, 228, 234, 20 Sup. Ct. 96, 44 L. Ed. 136; Portland Ry. Co. v. Oregon R. R. Comm., 229 U. S. 397, 412, 413, 33 Sup. Ct. 820, 57 L. Ed. 1248; Atlantic Coast Line R. Co. v. Finn, 195 Fed. 685, 690, 117 C. C. A. 1; Holt v. Henley. 193 Fed. 1020, 1021, 113 C. C. A. 87.

[5] In the case made by the bill, which for the purposes of this motion must be accepted as true, defendant's claims are shown to be inequitable. He seeks to compel plaintiff to yield to him without consideration property for which he has fairly agreed to pay an adequate price. While courts would not refrain from declaring and applying legal principles, because peculiar hardships will result in isolated instances, they are not to be persuaded consciously to do injustice in violation of those principles.

The motion is denied.